**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724**<br>**HON. CYNTHIA M. RUFE** |
| **IN RE:  ECONAZOLE CASES** | LEAD CASE: 16-EC-27240 |
| **THIS DOCUMENT RELATES TO:**<br><br>*ALL END-PAYER ACTIONS* | END-PAYER CASE: 16-EC-27242 |

**END-PAYER PLAINTIFFS' OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS THE**
**CONSOLIDATED END-PAYER CLASS ACTION COMPLAINT**

FILED WITH REDACTIONS – PUBLIC VERSION

## PREFATORY STATEMENT

For each of the six Lead Cases in Case Management Group No. 1, EPPs have structured their opposition briefs in a substantially similar fashion.

- Section I of each brief contains an introduction;

- Section II responds to Defendants' *Twombly* arguments;

- Section III responds to Defendants' individual motions;

- Section IV responds to Defendants' Article III and antitrust standing arguments.

  Defendants' arguments on these topics are substantially similar across all six Lead Cases, and, accordingly, Plaintiffs' response (Section IV) is substantially uniform in all six briefs.

- Section V and Appendices A & B respond to state antitrust arguments;

- Section VI and Appendices C & D respond to state consumer law arguments;

- Section VII and Appendices E & F respond to unjust enrichment arguments;

  With respect to Defendants' challenges to EPPs' state antitrust, consumer law and unjust enrichment claims, not all of Defendants' arguments are raised in each Lead Case, and the same arguments sometimes appear in different places in Defendants' various briefs. For the convenience of the Court, EPPs present a substantially uniform response to these arguments in each of their Group 1 opposition briefs (Sections V through VII and Appendices A through F). In accompanying text or footnotes, EPPs direct the Court to the location of the arguments to which they are responding, including when the arguments appear in briefs filed in other Lead Cases.

- Section VIII and Appendix G respond to statute of limitations arguments;

- Section IX requests leave to amend, if necessary; and

- Section X is a conclusion.

In compliance with PTO Nos. 28 and 41, EPPs' response herein to Defendants' Common Motion is 60 pages or less. EPPs' response to the individual motion by Teligent does not exceed 4 pages.

FILED WITH REDACTIONS – PUBLIC VERSION

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    PLAINTIFFS PLEAD FACTS ESTABLISHING A CONSPIRACY TO FIX
PRICES .................................................................................................... 1

    A.     Legal Standard ............................................................................... 1

    B.     Plaintiffs Allege Parallel Price Increases ...................................... 3

    C.     Plaintiffs Allege "Plus Factors" Indicative of Conspiracy ................... 6

          1.     Defendants Had a Common Motive to Conspire ....................... 6

          2.     Defendants Took Actions Against Self-Interest ....................... 7

          3.     Plaintiffs Identify a High Level of Interfirm Communications ................. 7

          4.     Federal and State Enforcement Agencies Are Actively
Investigating Defendants ....................................................... 9

          5.     Defendants Benefited from Market Conditions Conducive
to Collusion ......................................................................... 12

III.   TELIGENT'S INDIVIDUAL MOTION TO DISMISS FAILS ...................................... 13

    A.     Plaintiffs Have Alleged Teligent Engaged in Parallel Pricing ............................. 13

    B.     Plaintiffs Have Alleged Teligent Used in Person Meetings at Industry
Events to Further the Econazole Conspiracy ......................................... 15

    C.     Plaintiffs Need Not Allege that Teligent Is Currently Subject to
Government Investigation ............................................................. 16

    D.     Teligent's Size Does Not Immunize It from Liability for Antitrust
Violations ................................................................................... 16

IV.   PLAINTIFFS HAVE STANDING TO SUE ................................................. 17

    A.     Plaintiffs Have Article III Standing ...................................... 17

    B.     Plaintiffs Have Antitrust Standing ...................................... 21

          1.     Defendants Directly and Proximately Caused Plaintiffs' Injuries ........... 22

          2.     TPPs' Injuries are Contemplated by the Antitrust Laws ......................... 23

          3.     Plaintiffs' Injuries Are Direct and Non-Speculative ............................... 24

FILED WITH REDACTIONS – PUBLIC VERSION

4.      TPPs are Direct Victims and Can Efficiently Enforce their Claims ........ 24

5.      There Is No Risk of Complex Apportionment of Damages or
        Inappropriate Duplicative Recovery ...................................................... 25

V.      PLAINTIFFS HAVE STATED CLAIMS UNDER STATE ANTITRUST LAWS ........ 26

        A.      Plaintiffs Allege Viable Illinois, Rhode Island and Vermont Antitrust
                Claims ........................................................................................................ 26

        B.      Plaintiffs Satisfy State Citizenship and Residency Requirements ....................... 28

        C.      Plaintiffs Provided Notice to Defendants and State AGs Where Required .......... 29

        D.      Defendants' Misconduct Had Substantial In-State Effects.................................. 30

VI.     PLAINTIFFS HAVE STATED CONSUMER PROTECTION CLAIMS...................... 31

        A.      Plaintiffs Have Alleged Facts Establishing the Elements of Each Claim............. 31

        B.      State Consumer Protection Statutes Apply to Anticompetitive Conduct and
                Are Not Barred by *Illinois Brick*............................................................ 32

        C.      Plaintiffs' Claims Are Not "Remote" ................................................................ 38

        D.      Plaintiffs Have Alleged In-State Effects of Defendants' Conduct ...................... 38

        E.      State Class Action Bars Do Not Apply in Federal Court...................................... 40

        F.      Georgia's Consumer Protection Statute Authorizes Damages Claims................. 42

        G.      Plaintiffs Adequately Allege Deceptive and Unconscionable Conduct
                Under Various States' Consumer Protection Statutes .......................................... 42

        H.      Plaintiffs State a Claim under the Wisconsin Deceptive Trade Practices
                Act  ...................................................................................................................... 45

        I.      Plaintiffs Are Not Required to Allege Reliance on a Misrepresentation
                under the Consumer Protection Laws of North Carolina and Wisconsin ............. 45

        J.      Plaintiffs Satisfy Statutory Definitions of "Consumers" ..................................... 46

        K.      Plaintiffs Are Not Required to Allege Direct Sales to Consumers ...................... 48

        L.      Plaintiffs Are Not Required to Meet Heightened Pleading Requirements .......... 49

        M.      Statutory Notice and/or Demand Requirements Do Not Apply Here.................. 49

        N.      Defendants Are "Suppliers" under Utah's Consumer Protection Statute ............. 50

        O.      Plaintiffs Have Stated a Claim Under Nevada Law............................................. 51

VII.    PLAINTIFFS HAVE ADEQUATELY PLED UNJUST ENRICHMENT ..................... 52

FILED WITH REDACTIONS – PUBLIC VERSION

A.    *Illinois Brick* Does Not Preclude Plaintiffs' Unjust Enrichment Claims.............. 52

B.    Defendants' "Direct Benefit" Argument Fails........................................................ 54

C.    Defendants' "Independent Cause of Action" Arguments Are Wrong.................. 55

D.    Plaintiffs Satisfy Tennessee's "Exhaustion of Remedies" Requirement.............. 56

E.    Plaintiffs Plead that They Lack an Adequate Legal Remedy .............................. 57

F.    Illinois and South Carolina Do Not Require a "Special Duty"............................ 57

VIII.   PLAINTIFFS' CLAIMS ARE TIMELY ............................................................... 58

A.    The Discovery Rule Applies.................................................................................... 58

B.    Plaintiffs Adequately Allege Fraudulent Concealment ....................................... 60

C.    The Continuing Violation Doctrine Applies.......................................................... 61

IX.    IF THE CACC IS DEEMED LEGALLY INSUFFICIENT, PLAINTIFFS
      SHOULD BE GRANTED LEAVE TO AMEND ......................................................... 62

X.     CONCLUSION............................................................................................................ 62

FILED WITH REDACTIONS – PUBLIC VERSION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1st Nationwide Collection Agency, Inc. v. Werner*,
    288 Ga. App. 457 (Ga. Ct. App. 2007) ................................................................. 35

*2P Commercial Agency v. SRT USA Inc.*,
    2013 WL 246650 (M.D. Fla. Jan. 23, 2013) ........................................................ 38

*Action Auto Glass v. Auto Glass Specialists*,
    134 F. Supp. 2d 897 (W.D. Mich. 2001) .............................................................. 47

*Adam A. Weschler & Son, Inc. v. Klank*,
    561 A.2d 1003 (D.C. App. 1989).......................................................................... 47

*Ala. Elec. Pension Fund v. Bank of Am. Corp.*,
    175 F. Supp. 3d 44 (S.D.N.Y. 2016).................................................................... 9

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
    228 F.3d 429 (3d Cir. 2000).................................................................................. 24

*Alsides v. Brown Inst., Ltd.*,
    592 N.W.2d 468 (Minn. Ct. App. 1999) .............................................................. 43

*Amalgamated Transit Union*, *Local 1756, AFL-CIO v. Superior Court*,
    209 P.3d 937 (Cal. 2009) ..................................................................................... 38

*Ames v. Oceanside Welding & Towing Inc.*,
    767 A.2d 677 (R.I. 2001) ..................................................................................... 37

*Assoc. General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).............................................................................................. 21

*BanxCorp v. Bankrate Inc.*,
    No. 07-3398, 2011 WL 6934836 (D.N.J. Dec. 30, 2011)..................................... 9

*Baptist Health v. Murphy*,
    226 S.W.3d 800 (Ark. 2006)............................................................................ 34, 44

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................... passim

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
    985 F. Supp. 2d 612 (S.D.N.Y. 2013)................................................................... 9

FILED WITH REDACTIONS – PUBLIC VERSION

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989) ................................................................................ 25, 32, 54

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (Cal. Ct. App. 2001) ............................................... 38

*Clayworth v. Pfizer, Inc.*,
233 P.3d 1066 (Cal. 2010) ....................................................................... 38

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................... 56

*Cottrell v. Alcon Labs.*,
874 F.3d 154 (3d Cir. 2017) ................................................................ 17, 18

*Crisp Human Capital Ltd. v. Authoria Inc.*,
613 F. Supp. 2d 136 (D. Mass. 2009) ...................................................... 50

*Crouch v. Crompton*,
No. 02 CVS 4375, 2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004) .................. 23

*D.R. Ward Const. Co. v. Rohm & Haas Co.*,
470 F. Supp. 2d 485 (E.D. Pa. 2006) ................................................... 24, 25

*Davis v. Four Seasons Hotel Ltd.*,
228 P.3d 303 (Haw. 2010) ........................................................................ 47

*Del Webb Communities Inc. v. Partington*,
652 F.3d 1145 (9th Cir. 2011) .............................................................. 47, 51

*District Cablevision Ltd. v. Bassin*,
828 A.2d 714 (D.D.C. 2003) ..................................................................... 34

*Dooner v. Yuen*,
No. CV 16-1939, 2016 WL 6080814 (D. Minn. Oct. 17, 2016) .................. 57

*Eli Lilly v. Tyco Integrated Security*,
No. 13-80371-CIV-BLOOM/Valle, 2015 WL 11251732 (S.D. Fla. Feb. 10, 2015) .............. 49

*Elkins v. Microsoft Corp.*,
174 Vt. 328 (2002) .................................................................................... 48

*Fenerjian v. Nongshim Co.*,
72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................................... 59

FILED WITH REDACTIONS – PUBLIC VERSION

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*,
    261 F. Supp. 2d 837 (E.D. Mich. 2003)......................................................... 47

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
    85 F. Supp. 3d 1007 (E.D. Wis. 2015)................................................ 61, 62

*Formula One Licensing v. Purple Interactive*,
    No. COO-2222, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001)........................ 32, 38

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W. 3d 512 (Tenn. Aug. 25, 2005)...................................................... 56

*Fried v. JP Morgan Chase & Co.*,
    850 F.3d 590 (3d Cir. 2017)..................................................................... 58

*FTC v. Cement Inst.*,
    333 U.S. 683 (1948)................................................................................ 33

*FTC v. Indiana Fed'n of Dentists*,
    476 U.S. 447 (1986)................................................................................ 33

*FTC v. Mylan Labs*,
    62 F. Supp. 2d 25 (D.D.C. 1999)............................................................... 47

*FTC v. Mylan Labs. Inc.*,
    99 F. Supp. 2d 1 (D.D.C. 1999)................................................................. 37

*Gibbons v. J. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ............................................................... 36, 48

*Harbour Capital Corp. v. Allied Capital Corp.*,
    No. 08-cv-506, 2009 WL 2185449 (D.N.H. July 22, 2009).................................. 39

*Hill v. Hoover Co.*,
    899 F. Supp. 2d 1259 (N.D. Fla. 2012)....................................................... 49

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ................................................................. 47

*HLD Enters., Inc. v. Michelin N. Am., Inc.*,
    No. 1:03-cv-2558T, 2004 WL 2095739 (N.D. Ga. June 29, 2004) ......................... 35

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)......................................................................... 22, 53

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010)................................................ 37, 55

*In re Aftermarket Filters Antitrust Litig.*,
No. 08-C-4883 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ........................................ 30, 36, 44

*In re Aggrenox Antitrust Litig.*,
No. 3:14-md-2516 (SRU), 2016 WL 4204478 (D. Conn. Aug. 9, 2016) ......................... passim

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009)............................................ 11

*In re Asacol Antitrust Litig.*,
No. 15-CV-12730-DJC, 2016 WL 4083333 (D. Mass. July 20, 2016) ................................... 29

*In re Asacol Antitrust Litig.*,
No. 15-CV-12730-DJC, 2017 WL 5196381 (D. Mass. Nov. 9, 2017).............................. 20, 24

*In re Aspartame Antitrust Litig.*,
No. CIV.A.2:06-CV-1732, 2007 WL 5215231 (E.D. Pa. Jan. 18, 2007)................................ 60

*In re Auto. Parts Antitrust Litig.*,
29 F. Supp. 3d 982 (E.D. Mich. 2014)............................................................................. passim

*In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836 (E.D. Mich. 2014) ............................ 41, 44

*In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869 (E.D. Mich. 2014)  ........................... 10, 20

*In re Auto. Parts Antitrust Litig.*,
No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013)................................... passim

*In re Auto. Parts Antitrust Litig.*,
No. 12-MD-02311, 2014 WL 2993753 (E.D. Mich. July 3, 2014) ........................................ 59

*In re Avandia Marketing, Sales Practices & Prod. Liability Litig.*,
804 F.3d 633 (3d Cir. 2014)................................................................................................... 24

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999)............................................................................................ 2, 3, 4

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................................................... 32

*In re Blood Reagents Antitrust Litig.*,
756 F. Supp. 2d 623 (E.D. Pa. 2010) ............................................................................... 3, 8, 9

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Brand Name Prescription Drug Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997) ............................................................ 30

*In re Broiler Chicken Antitrust Litig.*,
No. 16-C-7176, 2017 WL 5574376 (N.D. Ill. Nov. 20, 2017) .......................................... passim

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000)...................................................... 30, 31, 52

*In re Cardizem CD Antitrust Litig.*,
MDL 1278, Order No. 70 (E.D. Mich. May 23, 2003).......................................... 53

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
No. 1:14-MD-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015)................................ 31, 51

*In re Checking Account Overdraft Litig.*,
No. 1:09-md-02036, 2016 WL 5848729 (S.D. Fla. Feb. 8, 2016)............................ 46

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) .................................................... passim

*In re Chocolate Confectionary Antitrust Litig.*,
749 F. Supp. 2d 224 (M.D. Pa. 2010) ...................................................... 39, 51, 56

*In re Chocolate Confectionary Antitrust Litig.*,
801 F.3d 383 (3d Cir. 2015)................................................................ 2, 3, 4

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 9-cv-3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)............................ 35, 38

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012)...................................................... passim

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011)...................................................... 27, 30

*In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) ........................................................ 8, 16

*In re Domestic Drywall Antitrust Litig.*,
No. 15-cv-2437, 2016 WL 3769680 (E.D. Pa. Jul 13, 2016) ............................ 44, 47

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*,
No. 12–cv–169, 2013 WL 5503308, (D.N.J. Oct. 2, 2013)...................................... 29

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Dynamic Random Access Memory Antitrust Litig.*,
 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ....................................................... 28, 37, 38

*In re Fasteners Antitrust Litig.*,
 No. Civ. A. 08-MD-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011)................................ 60

*In re Flash Memory Antitrust Litig.*,
 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................................... 9, 44

*In re Flat Glass Antitrust Litig.*,
 385 F.3d 350 (3d Cir. 2004)........................................................................... 3, 4, 5

*In re Flonase Antitrust Litig.*,
 692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................... 27, 39, 50, 53

*In re G-fees Antitrust Litig.*,
 584 F. Supp. 2d 26 (D.D.C. 2008) ...................................................................... 52, 57

*In re Graphic Processing Units Antitrust Litig.*,
 527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................... 10, 34, 44

*In re Graphic Processing Units Antitrust Litig.*,
 540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................................. 34

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
 647 F. Supp. 2d 1250 (W.D. Wash. 2009).............................................................. 10

*In re Hydroxycut Marketing and Sales Practices Litig.*,
 299 F.R.D. 648 (S.D. Cal. 2014) ..................................................................... 40, 41

*In re Ins. Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010).................................................................................. 2

*In re Intel Corp. Microprocessor Antitrust Litig.*,
 496 F. Supp. 2d 404 (D. Del. 2007).................................................................. 31, 40

*In re K-Dur Antitrust Litig.*,
 338 F. Supp. 2d 517 (D.N.J. 2004) ....................................................................... 25

*In re Lidoderm Antitrust Litig.*,
 103 F. Supp. 3d 1155 (N.D. Cal. 2015) ....................................................... 33, 34, 47

*In re Lidoderm Antitrust Litig.*,
 No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017).................................... 25

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
   751 F. Supp. 2d 183 (D. Me. 2010) ........................................................................ 56

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002)................................................................................... 60

*In re Lipitor Antitrust Litig.*,
   868 F.3d 231 (3d Cir. 2017)................................................................................. 2, 5

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   No. CV 16-MD-2687 (JLL), 2017 WL 3131977 (D.N.J. July 20, 2017) ........................ passim

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ........................ 22, 25, 27

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   213 F. Supp. 3d 530 (S.D.N.Y. 2016)....................................................................... 10

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) .................................................................... passim

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   309 F.R.D. 107 (D. Mass. 2015)............................................................................. 25

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013) ........................................................... 20, 27, 29

*In re Niaspan Antitrust Litigation*,
   42 F. Supp. 3d 735 (E.D. Pa. 2014) ................................................................... passim

*In re Opana ER Antitrust Litig.*,
   162 F. Supp. 3d 704 (N.D. Ill. 2016) ............................................................. 20, 27, 29

*In re Opana ER Antitrust Litig.*, No. 14 C 10150, 2016 WL 4245516
   (N.D. Ill. Aug. 11, 2016) ..................................................................................... 55

*In re Packaged Ice Antitrust Litig.*,
   723 F. Supp 2d 987 (E.D. Mich. 2010) ............................................................. 12, 61

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)........................................................ 12, 36, 61

*In re Packaged Seafood Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017)............................................................. passim

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Packaged Seafood Antitrust Litig.*,
No. 15-MD-2670, 2017 WL 4271894 (S.D. Cal. Sept. 26, 2017)............................................ 37

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)...................................................................................... 40, 41

*In re Pharm. Indus. Average Wholesale Price Litig.*,
233 F.R.D. 229 (D. Mass. 2006) .......................................................................................... 37

*In re Pharm. Indus. Average Wholesale Price Litig.*,
491 F. Supp. 2d 20 (D. Mass. 2007) .......................................................................... 37, 39, 47

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009).............................................................................................. 47

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
764 F. Supp. 2d 991 (N.D. Ill. 2011) ..................................................................................... 16

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
158 F. Supp. 3d 544 (E.D. La. 2016), *appeal dismissed* (Oct. 27, 2016) .................................. 3

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
946 F. Supp. 2d 554 (E.D. La. 2013) ..................................................................................... 35

*In re Pre-Filled Propane Tank Antitrust Litig.*,
860 F.3d 1059 (8th Cir. 2017) ............................................................................................. 61

*In re Processed Egg Prods. Antitrust Litig.*,
851 F. Supp. 2d 867 (E.D. Pa. 2012) .............................................................................. passim

*In re Propranolol Antitrust Litig.*,
249 F. Supp. 3d 712 (S.D.N.Y. 2017).............................................................................. passim

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)................................................................................................ 18

*In re Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................... passim

*In re Refrigerant Compressors Antitrust Litig.*,
No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)........................................ 23

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 1:12-MD-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013)....................................... 62

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503-DJC, 2015 WL 5458570 (D. Mass. Sept. 16, 2015) ........................... passim

*In re Solodyn Antitrust Litig.*,
No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ............................................ 42

*In re Static Random Access Memory Antitrust Litig.*,
2010 U.S. Dist. LEXIS 131002 (N.D. Cal. Dec. 8, 2010) .................................................. 34, 36

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*,
64 F. Supp. 3d 665 (E.D. Pa. 2014) ................................................................................. passim

*In re Target Corp. Customer Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) ......................................................................... 40, 41, 42

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ................................................................................................. 8

*In re Text Messaging Antitrust Litig.*,
782 F.3d 867 (7th Cir. 2015) ................................................................................................. 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ....................................................................... 34, 37, 38

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................................................................... 55, 56

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C 09-4997 SI, 2010 WL 260943 (N.D. Cal. June 28, 2010) ............................................. 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1821 SI, 2011 WL 3809767
(N.D. Cal. Aug. 29, 2011) .................................................................................................... 21

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
No. M 07–CV–1827, 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011) ..................................... 55

*In re Thalomid & Revlimid Antitrust Litig.*,
No. CV 14-6997 (KSH) (CLW), 2015 WL 9589217 (D.N.J. Oct. 29, 2015).................... 19, 21

*In re Volkswagen Timing Chain Product Liability Litig.*,
No. 16-2765, 2017 WL 1902160 (D.N.J. May 8, 2017).................................................. 40, 41

*In re Warfarin Sodium Antitrust Litig.*,
214 F.3d 395 (3d Cir. 2000)........................................................................................ 22, 23, 24

FILED WITH REDACTIONS – PUBLIC VERSION

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................ 23, 24

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) .................................................. 47

*Innovation Ventures, LLC v. N2G Distributing, Inc.*,
    779 F. Supp. 2d 671 (E.D. Mich. 2011) ................................................ 47

*InterVest, Inc. v. Bloomberg, L.P.*,
    340 F.3d 144 (3d Cir. 2003) .................................................................... 9

*ITCO Corp. v. Michelin Tire Corp., Commercial Div.*,
    722 F.2d 42 (4th Cir. 1983) ................................................................... 46

*Jewett v. Boihem*,
    23 So. 3d 658 (Ala. 2009) ...................................................................... 54

*John Labatt Ltd. v. Molson Breweries*,
    853 F. Supp. 965 (E.D. Mich. 1994) ..................................................... 47

*Johnson v. GAPVT Motors*,
    292 Ga. App. 79 (Ga. Ct. App. 2008) .................................................... 42

*Jones v. ConAgra Foods, Inc.*,
    No. C-12-01633, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ............ 46

*Jorgenson v. Agway, Inc.*,
    627 N.W.2d 391 (N.D. 2001) ................................................................ 43

*Just New Homes, Inc. v. Beazer Homes*,
    293 F. App'x 931 (3d Cir. 2008) ............................................................. 9

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
    702 F. Supp. 2d 514 (E.D. Pa. 2010) ..................................................... 53

*Kleen Products LLC v. Int'l Paper*,
    No. 10 C 5711, 2017 WL 3310975 (N.D. Ill. Aug. 3, 2017) ................... 9

*Kosta v. Del Monte Corp.*,
    No. 12-CV-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ... 55

*LaFlamme v. Societe Air France*,
    702 F. Supp. 2d 136 (E.D.N.Y. 2010) ................................................... 10

FILED WITH REDACTIONS – PUBLIC VERSION

*Landgraf v. Usi Film Prods.*,
    511 U.S. 244 (1994)........................................................................................ 28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014).................................................................................... 17

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ................................................................. 27, 41

*Loeb Industries, Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) .......................................................................... 23

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
    No. 13-cv-01180, 2015 WL 475535 (N.D. Cal. Aug. 11, 2015) ................... 41, 58

*Lum v. Bank of America.*,
    361 F.3d 217 (3d Cir. 2004)............................................................................. 5

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ...................................................................... 30, 50

*Mack v. Bristol-Meyers Squibb Co.*
    673 So.2d 100 (Fla. Ct. App. 1996)........................................................... 35, 38

*Macquarie Grp. Ltd. v. Pac. Corporate Grp., LLC*,
    No. 08-CV-2113 IEG-WMC, 2009 WL 539928 (S.D. Cal. Mar. 2, 2009) ............ 44

*Mann v. Bahi*,
    251 F. Supp. 3d 112 (D.D.C. 2017) ................................................................ 47

*Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*,
    No. 07-CV-01078, 2011 WL 11559549 (E.D. Pa. Mar. 24, 2011)..................... 58

*Martin v. Ford Motor Co.*,
    292 F.R.D. 252 (E.D. Pa. 2013)...................................................................... 53

*Martis v. Grinnell Mutual Reinsurance Co.*,
    905 N.E. 2d 920 (Ill. App. Ct. 2009) .............................................................. 57

*Matanuska Maid, Inc. v. Alaska*,
    620 P.2d 182 (1980).................................................................................. 33, 40

*Miller v. French*,
    530 U.S. 327 (2000)....................................................................................... 53

FILED WITH REDACTIONS – PUBLIC VERSION

*Miller v. Samsung Elecs. Am., Inc.*,
  No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015)........................................................ 19

*Milliken & Co. v. CNA Holdings, Inc.*,
  No. 3:08-CV-578, 2011 WL 3444013 (W.D.N.C. Aug. 8, 2011) ..................................... 10, 11

*Moronta v. Nationstar Mortgage, LLC*,
  476 Mass. 1013 (2016) ...................................................................................................... 50

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
  532 S.E. 2d 868 (S.C. 2000) .............................................................................................. 58

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*,
  34 N.E. 3d 1023 (Ill. App. Ct. 2015) ................................................................................. 57

*NCAA v. Bd. of Regents of Univ. of Okla.*,
  468 U.S. 85 (1984)............................................................................................................. 23

*Nev. Power Co. v. Eighth Jud. Dist. Ct. of Nev.*,
  102 P.3d 578 (Nev. 2004) .................................................................................................. 51

*New York v. Feldman*,
  210 F. Supp. 2d 294 (S.D.N.Y. 2002).................................................................................. 44

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*,
  730 F.3d 263 (3d Cir. 2013)................................................................................................ 59

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
  998 F.2d 1224 (3d Cir. 1993)........................................................................................... 2, 4

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)............................................................................................... 62

*Piechur v. Redbox Automated Retail, LLC*,
  No. 09-cv-984 (JPG), 2010 WL 706047 (S.D. Ill. Feb. 24, 2010) ........................................ 26

*Pion v. Bess Eaton Donuts Flour Co.*,
  637 A.2d 367 (R.I. 1994).................................................................................................... 28

*Ports Petroleum Co. of Ohio v. Nixon*,
  37 S.W.3d 237 (Mo. 2001) ................................................................................................. 35

*Raintree Homes, Inc. v. Vill. of Long Grove*,
  807 N.E. 2d 439 (Ill. 2004)................................................................................................. 56

FILED WITH REDACTIONS – PUBLIC VERSION

*Ransom v. Marrese,*
    524 N.E.2d 555 (Ill. 1988) ........................................................................... 26

*Rathe Salvage, Inc. v. R. Brown & Sons, Inc.,*
    184 Vt. 355 (2008) ...................................................................................... 48

*Rhode Island Laborers v. Philip Morris,*
    99 F. Supp. 2d 174 (D.R.I. 2000) ................................................................ 48

*Rodi v Southern New England School of Law,*
    389 F.3d 5 (1st Cir. 2004) ........................................................................... 50

*S. Serv. v. Excel Building Servs. Inc.,*
    617 F. Supp. 2d 1097 (D. Nev. 2007) ......................................................... 51

*Sawyer v. Robson,*
    181 Vt. 216 (2006) ...................................................................................... 49

*Schmidt v. Skolas,*
    770 F.3d 241 (3d Cir. 2014) ........................................................................ 58

*SD3, LLC v. Black & Decker (U.S.) Inc.,*
    801 F.3d 412 (4th Cir. 2015) ................................................................... 2, 3

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ................................................................. 26, 27, 40, 49

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,*
    263 F.R.D. 205 (E.D. Pa. 2009) .................................................................. 29

*Sheet Metal Workers Local 441 v. GlaxoSmithKline PLC,*
    737 F. Supp. 2d 380 (E.D. Pa. 2010) .................................................. passim

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.,*
    221 F. Supp. 3d 227 (D.R.I. 2016) .............................................................. 20

*SigmaPharm, Inc. v. Mut. Pharm. Co.,*
    772 F. Supp. 2d 660 (E.D. Pa.) ................................................................... 23

*Soo Line R. Co. v. Overton,*
    992 F.2d 640 (7th Cir. 1993) ...................................................................... 21

*Spacesaver Corp. v. Marvel Grp., Inc.,*
    621 F.Supp.2d 659 (W.D. Wis. 2009) ........................................................ 46

FILED WITH REDACTIONS – PUBLIC VERSION

*Stanley v. Huntington Nat'l Bank*,
 No. 1:11cv54, 2012 WL 254135 (N.D. W. Va. Jan. 27, 2012) ................................................. 50

*Starr v. Sony BMG Music Entm't*,
 592 F.3d 314 (2d Cir. 2010) ...................................................................................... 9, 16

*State by Humphrey v. Alpine Air Prod., Inc.*,
 490 N.W.2d 888 (Minn. Ct. App. 1992), *aff'd*, 500 N.W.2d 788 (Minn. 1993) ..................... 43

*State ex rel. Bryant v. R&A Inv. Co.*,
 336 Ark. 289 (1999) .................................................................................................. 34

*State v. Abbott Labs.*,
 829 N.W.2d 753 (Wis. Ct. App. 2013) ............................................................... 45, 46

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
 171 F.3d 912 (3d Cir. 1999) ....................................................................................... 23

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998) ..................................................................................................... 19

*Stone v. White*,
 301 U.S. 532 (1937) ................................................................................................... 52

*Suchanek v. Sturm Foods, Inc.*,
 311 F.R.D. 239 (S.D. Ill. 2015) ................................................................................. 41

*Superior Offshore Int'l, Inc. v. Bristow Group, Inc.*,
 738 F. Supp. 2d 505 (D. Del. 2010) ............................................................................ 4

*Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*,
 490 F. App'x 492 (3d Cir. 2012) ................................................................................. 2

*Supreme Auto. Transp. LLC v. Arcelor Mittal*,
 238 F. Supp. 3d 1032 (N.D. Ill. 2017) ...................................................................... 22

*Synergistic Int'l, LLC v. Korman*,
 402 F. Supp. 2d 651 (E.D. Va. 2005), *aff'd in part, rev'd in part on other grounds*,
 470 F.3d 162 (4th Cir. 2006) ..................................................................................... 43

*TD Bank N.A. Debit Card Overdraft Fee Litig.*,
 150 F. Supp. 3d 593 (D.S.C. 2015) ............................................................................ 41

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, No. 07-c-0765, 2011 WL 13116667 (E.D. Wis. Nov. 15, 2011) .................. 45

FILED WITH REDACTIONS – PUBLIC VERSION

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
    492 F. Supp. 2d 1314 (M.D. Fla. 2007) ................................................................. 49

*Thorpe v. Dohman*,
    No. Civ.A.04-CV-1099, 2004 WL 2397399 (E.D. Pa. Oct. 22, 2004) .................... 14

*Tim Torres Enterprises, Inc. v. Linscott*,
    416 N.W.2d 670 (Wis. Ct. App. 1987) ................................................................. 45

*United States v. Andreas*,
    216 F.3d 645 (7th Cir. 2000) ................................................................................ 9

*United States v. Bame*,
    721 F.3d 1025 (8th Cir. 2013) ............................................................................. 57

*United States v. Socony–Vacuum Oil Co.*,
    310 U.S. 150 (1940) .............................................................................................. 3

*United States v. Texas*,
    507 U.S. 529 (1993) ............................................................................................ 53

*United States v. U.S. Gypsum Co.*,
    600 F.2d 414 (3d Cir.1979) ................................................................................... 6

*Utah v. B&H Auto*,
    701 F. Supp. 201 (D. Utah 1988) ........................................................................ 51

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017) ............................................................................. 1, 4

*Van Buskirk v. Carey Can. Mines, Ltd.*,
    760 F.2d 481 (3d Cir. 1985) ............................................................................... 58

*Ventura v. Kyle*,
    825 F.3d 876 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 667 (2017) .......................... 57

*Wallach v. Eaton Corp.*,
    814 F. Supp. 2d 428 (D. Del. 2011) ................................................................ 6, 15

*Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ................................................................... passim

*West Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3rd Cir. 2010) ........................................................................ 1, 2, 17

FILED WITH REDACTIONS – PUBLIC VERSION

*Williams v. Central Money Co.*,
    974 F. Supp. 22 (D.D.C. 1997) ........................................................................... 39

*Williams v. Wells Fargo Bank N.A.*,
    No. 11-21233-CIV, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ........................ 55

*Winfree v. N. Pacific Ry. Co.*,
    227 U.S. 296 (1913) ............................................................................................ 28

*Winkelman v. Kraft Foods, Inc.*,
    693 N.W.2d 756 (Wis. Ct. App. 2005) ................................................................. 45

*Wittman v. CB1*,
    No. CV-15-05, 2016 WL 3093427 (D. Mon. June 1, 2016) ................................... 41

*Zeller v. Northrup King Co.*,
    370 N.W.2d 809 (Wis. Ct. App. 1985) ................................................................. 45

## Rules

Fed. R. Civ. P. 8 ....................................................................................... 1, 5, 49, 57

Fed. R. Civ. P. 9(b) ............................................................................................... 49

Fed. R. Civ. P. 12(b)(6) .................................................................................. passim

Fed. R. Civ. P. 23 ............................................................................................ passim

Fed. R. Civ. P. 56 ................................................................................................... 2

## Statutes

2013 R.I. Pub. Laws 365 ........................................................................................ 28

2013 R.I. SB 840 .................................................................................................... 28

2015 W.V. SB 315 .................................................................................................. 48

740 Ill. Comp. Stat. Ann. 10/7(2) ......................................................................... 26

9 V.S.A. § 2451a(h) ............................................................................................... 28

9 V.S.A. § 2453a .................................................................................................... 28

9 V.S.A. § 2465 ...................................................................................................... 28

FILED WITH REDACTIONS – PUBLIC VERSION

Alaska Stat. § 45.50.471(a) ................................................................................ 33

Alaska Stat. § 45.50.545 .................................................................................... 33

Alaska Stat. Ann. § 45.50.577(i) .................................................................... 33, 40

Alaska Stat. Ann. §§ 45.50.470-561 .............................................................. 33, 40

Alaska Stat. Ann. §§ 45.50.562-570 ................................................................... 33

Ark. Code Ann. § 4-88-113(f) ............................................................................ 38

Cal. Bus. & Prof. Code § 17201 ......................................................................... 47

Cal. Bus. & Prof. Code § 17204 ......................................................................... 47

Colo. Rev. Stat. § 6-1-105(1) ............................................................................. 43

D.C. Code § 28-3901(a) ..................................................................................... 47

D.C. Code § 28-3901(b)(1) ................................................................................ 34

Del. Code Ann. tit. 6, § 2512 ............................................................................. 39

Fla. Stat. § 501.204(2) ....................................................................................... 35

Fla. Stat. §501.204(1) ................................................................................... 34, 49

Ga. Code Ann. § 10-1-391(b) ............................................................................ 35

Ga. Code Ann. § 10-1-393(a) ........................................................................ 35, 42

Ga. Code Ann. § 399(a) ..................................................................................... 42

Hawaii Rev. Stat. § 480-2(e) ............................................................................. 47

Mass. Gen. Law Ch. 93A § 11 ........................................................................... 50

Mass. Gen. Law Ch. 93A § 9 ............................................................................. 50

Mich. Comp. Laws § 445.902(d) ........................................................................ 47

Mich. Comp. Laws § 445.902(g) ........................................................................ 47

Mich. Comp. Laws § 445.903 ............................................................................ 43

FILED WITH REDACTIONS – PUBLIC VERSION

Mich. Comp. Laws § 445.911 ................................................................................................. 43

Mich. Comp. Laws § 445.911(2) ........................................................................................... 47

Mo. Rev. Stat. § 407.010(5) .................................................................................................. 47

Mo. Rev. Stat. § 407.020(1) .................................................................................................. 35

Mont. Code Ann. § 30-14-103 .............................................................................................. 36

Mont. Code Ann. § 30-14-133 .............................................................................................. 41

Mont. Code Ann. § 30-14-133(1) ......................................................................................... 47

Mont. Code Ann. § 34-14-102(6) ......................................................................................... 47

N.C. Gen. Stat. § 75-1.1 ........................................................................................................ 45

N.D. Cent. Code Ann. § 51-15-02 ........................................................................................ 43

N.M. Stat. Ann. § 57-12-1, *et seq.* ...................................................................................... 44

N.M. Stat. Ann. § 57-12-2 .................................................................................................... 44

N.M. Stat. Ann. § 57-12-3 .................................................................................................... 36

N.M. Stat. Ann. § 57-12-4 .................................................................................................... 36

N.Y. Gen. Bus. Law § 349 .................................................................................................... 44

Nev. Rev. Stat. § 41.600(1) ................................................................................................... 51

Nev. Rev. Stat. § 598.0977 ................................................................................................... 51

Nev. Rev. Stat. §§ 598.0915-0925 ....................................................................................... 51

R.I. Gen. Laws § 6-13.1-1(3) ............................................................................................... 48

R.I. Gen. Laws § 6-13.1-2, ................................................................................................... 37

R.I. Gen. Laws § 6-13.1-3 .................................................................................................... 37

R.I. Gen. Laws § 6-36-7(d) .................................................................................................. 27

S.C. Code Ann. § 39-5-140(a) .............................................................................................. 41

FILED WITH REDACTIONS – PUBLIC VERSION

S.C. Code Ann. § 39-5-20 ......................................................................................... 37

S.D. Codified Laws § 37-24-6(1) .............................................................................. 43

Utah Code § 13-11-1, *et. seq.* ................................................................................. 44

Utah Code Ann. § 13-11-19(2) .................................................................................. 42

Utah Code Ann. § 13-11-19(4)(a) .............................................................................. 41

Utah Code Ann. § 13-11-3(6) .................................................................................... 50

Utah Code Ann. § 76-10-3109(1)(a) .......................................................................... 29

Va. Code Ann. § 59.1-200(14) ................................................................................... 43

Vt. Stat. Ann. tit. 9 § 2451a(a) .................................................................................. 48

Vt. Stat. Ann. tit. 9 § 2461(b) ................................................................................... 48

W. Va. Code § 46A-6-104 ........................................................................................ 37

W. Va. Code §46A-6-101(1) ..................................................................................... 37

W. Va. Code Ann. § 46A-6-102(2) ............................................................................ 48

W. Va. Code Ann. § 46A-6-106(a) ....................................................................... 48, 50

W. Va. Code Ann. § 46A-6-106(c)-(d) ...................................................................... 50

W.S.A. § 100.18, *et seq.* .......................................................................................... 45

### Treatises

*1 Moore's Fed. Prac. § 2.03[2]* (Matthew Bender 3d ed.) .......................................... 59

Daniel R. Karon, *Undoing the Otherwise Perfect Crime: Applying Unjust Enrichment to
    Consumer Price-Fixing Claims*, 108 W. Va. L. Rev. 395 (2005) ............................ 54

*Newberg on Class Actions* § 2.05 at 2-29 (3d ed. 1992) ............................................ 19

FILED WITH REDACTIONS – PUBLIC VERSION

## I.     INTRODUCTION

As demonstrated by End-Payer Plaintiffs ("EPPs") Consolidated Class Action Complaint ("CCAC"), after years of highly stable, only slightly-above-cost pricing, Defendants abruptly and simultaneously raised their generic Econazole prices to, in some cases, ▮▮▮▮ higher than previous levels.  Defendants cherry pick data points from the Complaint and analyze them in isolation, but the small (and legally insignificant) variations Defendants identify leave unchallenged Plaintiffs' central allegation:  After years of stable and low pricing, Defendants, out of the blue, raised their Econazole prices to astronomically high levels, and have kept their prices high throughout the Class Period.  These facts, along with numerous other allegations in Plaintiffs' Complaint, are more than sufficient to support a plausible inference that Defendants conspired to fix prices and allocate market share for generic Econazole.  Defendants' motions to dismiss should be denied.

## II.    PLAINTIFFS PLEAD FACTS ESTABLISHING A CONSPIRACY TO FIX PRICES

### A.     Legal Standard

Federal Rule of Civil Procedure ("Rule") 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has "expressly rejected the notion that a 'heightened pleading standard' applies in antitrust cases."  *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3rd Cir. 2010) ("*West Penn*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 569 n.14 (2007)).  Nonetheless, Defendants' motion is premised on summary judgment decisions.[1]  Even after *Twombly*, however, "the standards

---

[1] *See, e.g.*, Defs.' Mem. of Law in Supp. of Joint Mot. to Dismiss Consol. End-Payer Class Action Compl. at 5-6 ("Defs.' EPP Br.") (incorporating Defs.' Mem. of Law in Supp. of Defs.' Joint Mot. to Dismiss Consol. Direct Purchaser Class Action Compl. ("Defs.' DPP Br.") and citing, *e.g.*, *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 202 (3d Cir. 2017) (affirming summary judgment where plaintiff had not introduced evidence "showing that a

applicable to Rule 12(b)(6) and Rule 56 motions remain distinct." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.21 (3d Cir. 2010); *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) ("*SD3*"), *cert. denied*, 136 S. Ct. 2485 (2016).

Under Rule 12(b)(6), a complaint states a "plausible" Sherman Act § 1 claim where the factual allegations, assuming their veracity and viewed as a whole, "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. Antitrust plaintiffs are *not* required to allege facts proving defendants' conduct was more consistent with conspiracy than with other plausible alternatives, or even facts that "tend to exclude" unilateral action.[2]

Here, Plaintiffs allege both parallel conduct and a number of "plus factors" that are more than sufficient to "nudge[]" their complaint "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. It is surely plausible—and perhaps even likely (though that is not Plaintiffs' burden under Rule 12)—that the extraordinary and historically anomalous price increases implemented by Defendants were the result of anticompetitive agreements.

---

conspiracy is more likely than not")); *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 412 (3d Cir. 2015) ("*Chocolate II*") (affirming summary judgment where plaintiffs "failed to create a reasonable inference" that the defendants "more likely than not conspired to fix prices"); *Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*, 490 F. App'x 492, 497 (3d Cir. 2012) (affirming summary judgment where plaintiffs failed to "present evidence that tends to exclude the possibility that the alleged conspirators acted independently") (internal quotation marks and citation omitted); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 134 (3d Cir. 1999) ("*Baby Food*") (affirming summary judgment where "plaintiffs' evidence of alleged plus factors do not prove concerted, collusive behavior"); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1228 (3d Cir. 1993) ("*Petruzzi's*") (affirming in part, reversing in part summary judgment); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 869 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 524 (affirming summary judgment) ("*Text Messaging II*")).

[2] *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 254 (3d Cir. 2017) (reversing dismissal under Rule 12; emphasizing that "plausibility" is the standard for antitrust pleadings, which is "not akin to a probability requirement"; and re-affirming that plaintiffs need not "set out in detail" the bases of their claim) (internal quotation marks and citations omitted); *West Penn*, 627 F.3d at 91, 98 ("it is inappropriate to apply *Twombly*'s plausibility standard with extra bite in antitrust and other complex cases").

FILED WITH REDACTIONS – PUBLIC VERSION

B.     **Plaintiffs Allege Parallel Price Increases**

When evaluating allegations of parallel conduct under *Twombly*, the question is whether that conduct, in conjunction with the plus factors alleged, supports a plausible inference of conspiracy.  550 U.S. at 570.  The caselaw makes clear that credible allegations of parallel pricing encompass a wide swath of behavior.  The law does not rigidly require identical or coincident pricing.[3]  "Plaintiffs are not required to plead simultaneous price increases—or that the price increases were identical—in order to demonstrate parallel conduct."  *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 630 (E.D. Pa. 2010) ("*Blood Reagents*").[4] Rather, an "abrupt" change in industry practices can lead to an inference of a conspiracy. *Chocolate II*, 801 F.3d at 410.  Similar price increases that take place over a span of months may also be sufficiently parallel to support an inference of conspiracy.[5]  This is because, "when viewed in light of common economic experience"—which in the generic pharmaceutical

---

[3] *See generally United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 222 (1940) ("[P]rices are fixed . . . if the range within which purchases or sales will be made is agreed upon, if the prices paid or charged are to be at a certain level or on ascending or descending scales, if they are to be uniform, or if by various formulae they are related to the market prices. They are fixed because they are agreed upon.").

[4] *See also, e.g.*, *Baby Food*, 166 F.3d at 132 (recognizing that parallel pricing need not be uniform and may occur within an agreed upon range); *SD3*, 801 F.3d at 427 ("A plaintiff establishes parallel conduct when it pleads facts indicating that the defendants acted 'similarly.'") (citation omitted); *Socony–Vacuum Oil Co.*, 310 U.S. at 222 (holding that parallel pricing does not require pricing decisions to be "uniform and inflexible" because "[p]rice-fixing . . . has no such limited meaning").

[5] *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 364-68 (3d Cir. 2004) ("*Flat Glass*") (finding sufficiently parallel price increases that occurred over two months); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 158 F. Supp. 3d 544, 559 (E.D. La. 2016), *appeal dismissed* (Oct. 27, 2016) ("That the Manufacturer Defendants' announcements and effective price increases took place over the course of several months does not disprove that the Manufacturer Defendants engaged in parallel behavior."); *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 716 n.1, 731 (S.D.N.Y. 2017) ("*Propranolol*") (denying generic drug manufacturers' motion to dismiss antitrust claims where plaintiffs alleged dramatic price increases of varying degrees over a few months).

FILED WITH REDACTIONS – PUBLIC VERSION

industry means low and stable pricing—extreme and similar price increases permit an inference

of collusion. *Twombly*, 550 U.S. at 565.  Defendants' authorities do not hold otherwise. *See*

Defs.' EPP Br. at 5-6.[6]

Defendants abruptly raised the prices of generic Econazole to substantially the same

levels.  CCAC ¶¶ 75-92.  The CACC includes detailed pricing charts and tables based on three

distinct sources, all of which demonstrate radical, unprecedented price increases by all three

Defendants within a relatively short time period.  First, Plaintiffs provide tables based on IMS

Health's National Sales Perspectives ("NSP") that demonstrate Defendants' generic Econazole

prices ███████████████████████████, during the Class Period. *Id.* ¶¶

75-87.  For example, the tables show that prior to June 2014, Defendants' average effective

prices for their 85 gm generic Econazole products ranged from ████████ per unit. *Id.*

Then, from July through September 2014, Defendants began raising their prices, ultimately to

levels as much as ██████ higher than June 2014 prices. *Id.* ¶¶ 76-87; ¶ 82 (showing Taro's price

for 85 gm cream increased ██████ between June 2014 and May 2015).  These tables show

---

[6] All four of the Third Circuit opinions Defendants cite concerned the evidentiary showing necessary to survive summary judgment, and therefore are not dispositive as to whether Plaintiffs have alleged a plausible conspiracy at the pleadings stage. *See Valspar*, 873 F.3d at 190; *Baby Food*, 166 F.3d at 123; *Chocolate II*, 801 F.3d at 396; *Flat Glass*, 385 F.3d at 360.  In *Petruzzi's*, the Third Circuit held only that "[p]roof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place." 998 F.2d at 1235 (internal quotation marks and citation omitted).  Here, unlike in *Petruzzi's*, Plaintiffs have alleged much more than opportunity alone.  Similarly, in *Superior Offshore International, Inc. v. Bristow Group, Inc.*, the only fact plaintiffs alleged regarding a parallel criminal investigation was that DOJ served document subpoenas on some defendants, 738 F. Supp. 2d 505, 516 (D. Del. 2010), while here Plaintiffs have alleged, in detail, numerous facts about DOJ's criminal investigation and the state Attorneys General investigation finding compelling evidence of collusion and anticompetitive conduct across many companies that manufacture and market generic drugs in the United States.

FILED WITH REDACTIONS – PUBLIC VERSION

similar price increases across all dosages for all Defendants.[7]

This pricing pattern also appears in the Centers for Medicare and Medicaid Services' ("CMS") National Average Drug Acquisition Cost ("NADAC") data, *id*. ¶ 88, which demonstrates a radical, nearly 10-fold increase in average Econazole prices between October 2014 and April 2015. Finally, Defendants' reported wholesale acquisition costs ("WAC") data also demonstrates abrupt and massive price increases across their generic Econazole products. *Id.* ¶ 90. Defendants raised their WAC prices for generic Econazole to identical levels during the Class Period, even though this meant increasing WAC by as much as 890%. *Id*.

Defendants' attacks on Plaintiffs' price data are unavailing. *See* Defs.' DPP Br. at 15-17. No single source stands alone, and Defendants do not and cannot deny that *all* of the data Plaintiffs rely on show extreme price increases by all three Defendants between 2014 and 2015. Moreover, the law does not rigidly require allegations of fixed or parallel *transaction* prices, as Defendants suggest. *See Flat Glass*, 385 F.3d at 362 ("An agreement to fix prices is . . . a per se violation of the Sherman Act even if most or for that matter all transactions occurred at lower prices.") (quotation marks and citation omitted). Thus, there is no question that the fixing of WAC prices (or any other component of generic drug prices) violates the antitrust laws.[8]

---

[7] *E.g.*, CCAC ¶¶ 76-78 (showing Perrigo's price for 85 gm cream increased ▮▮▮ between June 2014 and January 2015); *id*. ¶¶ 84-86 (showing Teligent's price for 85 gm cream increased ▮▮▮ between June 2014 and July 2015).

[8] Defendants' reliance on *Lum v. Bank of America*, 361 F.3d 217, 232 (3d Cir. 2004), for the proposition that plaintiffs must allege "parallel pricing in the final price consumers pay," Defs.' DPP Br. at 16, is misplaced. *First*, that the relevant language from *Lum* is dicta, as the case was decided under the "heightened pleading requirement of Rule 9(b)," not under Rule 8. *Id.* at 229. *Second*, the Third Circuit has expressly recognized that *Lum* was abrogated by *Twombly*. *Lipitor*, 868 F.3d at 249. Because *Twombly* defines "plausibility" in this context, *Lum*'s conclusions on that issue are not persuasive. *Third*, the *Lum* court did not "decide whether an actual agreement to artificially raise a base price violates antitrust laws because that issue is not before us." *Id.* at 231. That issue was, however, subsequently resolved in *Flat Glass*, 385 F.3d at 362, and is directly at issue here: Plaintiffs have alleged that Defendants coordinated their

FILED WITH REDACTIONS – PUBLIC VERSION

### C.      Plaintiffs Allege "Plus Factors" Indicative of Conspiracy

Plaintiffs allege plus factors that provide the "further factual enhancement" and "context that raises a suggestion of a preceding agreement" and readily "nudge[s] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S at 557, 570.  Though Defendants disaggregate and critique each of Plaintiffs' plus factors in isolation, in antitrust cases "the character and effect of a conspiracy [are] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. U.S. Gypsum Co.*, 600 F.2d 414, 417 (3d Cir. 1979) (internal quotation marks and citation omitted).

### 1.      Defendants Had a Common Motive to Conspire

The motive for Defendants' conspiracy was increased profit.  *See, e.g.*, *Wallach v. Eaton Corp.*, 814 F. Supp. 2d 428, 439 (D. Del. 2011).  The regulatory regime surrounding generic pharmaceuticals is designed to keep prices (and profits) down, which pressured Defendants to find ways to increase prices and improve their bottom lines.  *See* CCAC ¶¶ 46-55; *Propranolol*, 249 F. Supp. 3d at 720 (finding Plaintiffs had sufficiently alleged motive to conspire where complaint "set forth in detail a regulatory regime that has historically pushed the price of Propranolol downwards and gradually reduced defendants' profits, thereby giving them a common motive to conspire").  Defendants enjoyed—and publicized—dramatically increased profits as a result of their conspiracy.  CCAC ¶¶ 68, 94-110.  Defendants' total revenue from sales of generic Econazole products jumped from ▮▮▮▮▮▮▮ in 2013, prior to the conspiracy, to approximately ▮▮▮▮▮▮▮ in 2015.  *Id.* ¶ 68.[9]

---

WAC prices, which are the benchmark prices throughout the pharmaceutical distribution chain, the inflation of which caused higher prices for EPPs.

[9] Defendants' public statements reflect and celebrate this massive increase in profits. Teligent's CEO and CFO publicly attributed the company's strong financial performance in late 2014 and beyond to increased prices and corresponding increased revenues from generic Econazole products.  CCAC ¶¶ 97-101.  Perrigo's CEO repeatedly attributed the company's

### 2.      Defendants Took Actions Against Self-Interest

Defendants who operate in the mature generic Econazole market can only gain market share by competing on price.  CCAC ¶ 68.  This is in part because the generic drug market contains an institutional feature—Maximum Allowable Cost ("MAC") pricing—that should prevent non-collusive parallel price increases.  *Id.* ¶¶ 60-62.  MAC pricing limits the ability of a manufacturer to unilaterally lead the market in a price increase because buyers subject to MAC pricing are penalized if they do not switch to any lower-priced alternative.  Because purchasers choose Econazole based primarily on price, and unilateral price increases typically result in loss of market share, it would have been economically irrational for any one Defendant to raise its prices drastically without assurance that its competitors would do the same.  *Id.* ¶ 7.  For the same reasons, Defendants had a strong incentive to defect from the ongoing conspiracy by undercutting the cartel pricing scheme.

Defendants' pricing tactics as alleged in the CCAC—raising prices by orders of magnitude above the previous stable baselines and then keeping them uniformly high—flies directly in the face of this self-interest.  Indeed, Judge Rakoff recently found—on the basis of very similar facts in the same industry—that end payor purchasers of propranolol sufficiently alleged that manufacturers' price increases were against their self-interest.  *Propranolol*, 249 F. Supp. 3d at 720-21.

### 3.      Plaintiffs Identify a High Level of Interfirm Communications

Plaintiffs allege that Defendants' executives had the opportunity to meet and collude face-to-face at numerous trade association meetings and other industry events before and throughout the Class Period, and that such opportunities are the subject of the DOJ and state

---

financial growth to the increased pricing and attendant revenue from prescription drugs like Econazole.  *Id.* ¶¶ 102-05.  Taro's CEO similarly attributed his company's significant financial growth to price increases.  *Id.* ¶¶ 106-10.

FILED WITH REDACTIONS – PUBLIC VERSION

Attorneys General investigations.  CCAC ¶¶ 8, 113-52.  While "common membership in trade associations [is] not enough by itself to confer plausibility on an allegation of conspiracy, [it] is yet another feature of the factual background" that lends support to an inference that Defendants agreed to raise prices and allocate customers.  *Blood Reagents*, 756 F. Supp. 2d at 632.  Plaintiffs are not required to allege specific collusive communications for trade association meetings to be relevant.  *See In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 66-67 (D.D.C. 2016) ("Plaintiffs need not allege the existence of collusive communications in 'smoke-filled rooms' in order to state a § 1 Sherman Act claim.  Rather, such collusive communications can be based upon circumstantial evidence and can occur in speeches at industry conferences, announcements of future prices, statements on earnings calls, and in other public ways.") (citation omitted).[10]

For example, Plaintiffs identify twenty-one trade association meetings through which Defendants implemented their conspiracy, including:  ten GPhA meetings (attended by at least two and often all three Defendants), CCAC ¶¶ 126-27, 130, 132-33, 136, 138-39, 142, 144; eight National Association of Chain Drug Stores ("NACDS") meetings (attended by at least two Defendants), *id*. ¶¶ 129, 131, 135, 137, 141, 143, 145; and ██████ Efficient Collaborative Retail Marketing ("ECRM") meetings (████████████████████), *id*. ¶¶ 128, 134, 140.  Plaintiffs allege that Defendants used these and other opportunities to further the conspiracy and

---

[10] Defendants' authorities do not counsel otherwise.  *See* Defs.' DPP Br. at 24. Defendants cite only *Text Messaging II*, which was decided under the more onerous summary judgment standard.  More importantly, when the Seventh Circuit considered that same case on a motion to dismiss, it actually affirmed the lower court's denial of defendants' motion to dismiss and *cited with approval* "the allegation in the complaint that the defendants belonged to a trade association and exchanged price information directly at association meetings" because "[t]his allegation identifies a practice, not illegal in itself, that facilitates price fixing that would be difficult for the authorities to detect."  *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) ("*Text Messaging I*").

FILED WITH REDACTIONS – PUBLIC VERSION

share competitively sensitive information.  *Id.* ¶¶ 112, 115-16, 146, 150-52.  Exhibit 1 contains a

chart detailing Defendants' attendance at these twenty-one meetings, at least five of which the

State Attorneys General have now identified as known places of conspiratorial activity.  *See,*

*e.g.*, Pl. States' [Proposed] Consol. Am. Compl. ("State Compl."), No. 17-cv-3768 (E.D. Pa. Oct.

31, 2017), ECF 3-1, ¶¶ 88, 140, 256, 260-61.[11]

### 4.    Federal and State Enforcement Agencies Are Actively Investigating Defendants

The pendency of a government investigation bolsters the plausibility of a price-fixing

claim in a civil antitrust suit.  *See Blood Reagents*, 756 F. Supp. 2d at 632 (citing *Starr v. Sony*

*BMG Music Entm't*, 592 F.3d 314, 324 (2d Cir. 2010)).  "The mere existence of such

investigations is a circumstance that, 'when combined with parallel behavior, might permit a jury

to infer the existence of an agreement.'"  *Ala. Elec. Pension Fund v. Bank of Am. Corp.*, 175 F.

Supp. 3d 44, 55 (S.D.N.Y. 2016) (citation omitted).  Contrary to Defendants' arguments, *see*

Defs.' DPP Br. at 7, the existence of a conspiracy in one product market supports the plausible

inference of conspiracy in a related market.  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d

1133, 1149 (N.D. Cal. 2009) (quoting *United States v. Andreas*, 216 F.3d 645 , 665 (7th Cir.

2000)).  This is particularly true where, as here, some of the same actors participate in both

markets and the alleged conspiracy "is based on similar anti-competitive conduct."  *Milliken &*

---

[11] Contrary to Defendants arguments (*see* Defs.' DP Br. at 21-25), Plaintiffs' allegations regarding Defendants' attendance and participation in conspiratorial communications at these meetings are a far cry from:  the bare allegations of association membership without more at issue in *Just New Homes, Inc. v. Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008); the "entirely conclusory" meeting allegations at issue in *BanxCorp v. Bankrate Inc.*, No. 07-3398, 2011 WL 6934836, at *14 (D.N.J. Dec. 30, 2011) (citing *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 162-63 (3d Cir. 2003)); the hypothetical discussions between unnamed participants at issue in *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 618 (S.D.N.Y. 2013); and the mere "temporal proximity" allegations (without allegations of substantive communications) at issue in *Kleen Products LLC v. International Paper*, No. 10 C 5711, 2017 WL 3310975, at *17 (N.D. Ill. Aug. 3, 2017).

FILED WITH REDACTIONS – PUBLIC VERSION

*Co. v. CNA Holdings, Inc.*, No. 3:08-CV-578, 2011 WL 3444013, at *11 (W.D.N.C. Aug. 8, 2011).  Similarly, the existence of a conspiracy in one market supports the inference of a conspiracy in another market where, as here, a "broader investigation" has uncovered an entire "industry rife with price-fixing." *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 882 (E.D. Mich. 2014) ("*Auto Parts III*").  The cases cited by Defendants do not suggest otherwise.[12]

The DOJ's ongoing criminal investigation has, to date, resulted in price-fixing guilty pleas from two senior executives relating to the sale of doxycycline hyclate and glyburide.  CACC ¶ 16.  These guilty pleas are highly relevant to the plausibility of Plaintiffs' allegations.  *See In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 995 (E.D. Mich. 2014) ("*Auto Parts*

---

[12] Many of the cases Defendants cite expressly recognize that government investigations are relevant to the Rule 12 inquiry and can support an inference of collusion.  *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 (M.D. Pa. 2009) ("*Chocolate I*") (concluding on motion to dismiss that "alleged conduct in Canada [uncovered by Canadian authorities] enhances the plausibility of the alleged U.S. price-fixing conspiracy"); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 560-61 (S.D.N.Y. 2016) (finding it "relevant that banks found ways to profit from manipulating other benchmarks in ways that were not initially apparent to outsiders" but not crediting investigation as plus factor where "DOJ's Antitrust Division has closed its investigation without charging anyone" or taking any other action); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-4997 SI, 2010 WL 2609434, at *4 (N.D. Cal. June 28, 2010) (recognizing, in sprawling case in which price-fixing claims proceeded relating to numerous products, that allegations of investigations and guilty pleas are relevant where there are sufficient allegations to suggest that the markets or defendants are related to the product in question, but finding "no allegations" whatsoever about the specific product at issue); *LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 154 (E.D.N.Y. 2010) (recognizing that allegations of relevant government investigations could support an inference of collusion, but that the plaintiffs' "vague allegations" could not); *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1258 (W.D. Wash. 2009) (recognizing that evidence of anticompetitive conduct in one market by "defendants with overlapping involvement in different markets" supports inference of conspiracy).  Defendants also cite cases in which courts declined to credit bare allegations of a government investigation; however, Defendants neglect to acknowledge that the plaintiffs were granted leave to amend, added more detail about the government investigations to their complaints (akin to the detail included here), which complaints then survived the defendants' renewed motion to dismiss.  *Compare In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (giving bare allegation of investigation "no weight" and dismissing complaint) *with In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1094 (N.D. Cal. 2007) (crediting amended allegations of government investigation and denying motion to dismiss).

10

*II*") ("[I]nvestigations and guilty pleas create an inference of an expansive industry-wide component parts conspiracy . . . [t]he Court views the events in the automotive parts litigation on a 'continuum, not in a vacuum or in isolation.'") (citation omitted).[13]  Moreover, the DOJ has made clear that its "investigation is ongoing" and the evidence already uncovered "implicates . . . a significant number of the Defendants . . . [and] a significant number of the drugs at issue" in this Multidistrict Litigation.  CCAC ¶ 10.  In addition to the federal criminal investigation, the Connecticut AG and the Attorneys General of 45 other states are investigating price fixing in at least fifteen generic drug markets.  *See id.* ¶ 23; *see also* State Compl. ¶ 1[14]  The State AGs have already named Sun, Taro's parent company, as a defendant.  *Id.* ¶ 40; *see also* CCAC ¶ 12.  And the State AGs expressly state that they "continue to investigate additional conspiracies, involving these and other generic manufacturers, regarding the sale of other drugs not identified in this Complaint, and will likely bring additional actions based on those conspiracies at the appropriate

---

[13] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009) (holding that although guilty pleas did not confirm the existence of an overarching conspiracy, they "certainly are suggestive enough to render a § 1 conspiracy plausible") (quotation marks and citation omitted); *Milliken & Co.*, 2011 WL 3444013, at *17 ("When viewed in context [] the guilty plea does enhance the expectation that discovery might lead to evidence of an illegal agreement") (citing *Chocolate I*, 602 F. Supp. 2d at 576-77).

[14] Although certain allegations from the State Complaint referenced herein are not included in Plaintiffs' CCAC, the Court may take judicial notice of and consider the States' complaint because it is a matter of public record. *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (finding that, to resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint); *Kelly v. Bus. Info. Grp., Inc.*, No. CV 15-6668, 2017 WL 2720173, at *2 (E.D. Pa. June 22, 2017) ("In addition, we may take judicial notice of and consider public records of other judicial proceedings without converting the motion to dismiss to a summary judgment motion."). The CCAC is sufficient to survive a motion to dismiss. Should the Court, however, decide that additional evidence is needed, EPPs should be granted leave to amend to add new evidence like that included in the State Complaint.

11

time in the future."  State Compl. ¶ 3.[15]

Defendant Taro (including two of its senior officers) and its parent company Sun have confirmed their receipt of DOJ grand jury subpoenas concerning their generic drug pricing and "communications with competitors."  CCAC ¶ 176.  Defendant Perrigo has confirmed that the DOJ raided Perrigo's corporate offices as part of its "ongoing investigation."  *Id.*  The raid is significant; it demonstrates the DOJ had probable cause to believe it would obtain evidence of an antitrust violation.  *See In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1003, 1008-12 (E.D. Mich. 2010) (finding that evidence of government investigations, including DOJ raids on corporate headquarters, "support the plausibility of a nationwide conspiracy").

## 5.  Defendants Benefited from Market Conditions Conducive to Collusion

The market for generic Econazole products was highly conducive to collusion.  *First*, there was a high degree of industry concentration, with Defendants controlling approximately ▮ of the generic Econazole market during the Class Period.  CCAC ¶¶ 71, 154.  *Second*, there are significant barriers to entry in the generic Econazole market—including capital barriers (*e.g.*, out-of-pocket costs required to bring a drug to market) and regulatory barriers (*e.g.*, the lengthy approval process, including a median four-year wait time)—which make such entry expensive and time-consuming.  *Id.* ¶¶ 164-67.  Defendant Teligent's executives repeatedly acknowledged that the market for topical products, like Econazole, has significant barriers to entry.  *Id.* ¶ 162.  *Third*, demand for generic Econazole is highly inelastic because patients view Econazole as

---

[15] Moreover, the State Complaint includes additional allegations implicating Sun in conspiracies to fix a number of generic drugs.  *See* State Compl. ¶¶ 115-34 (describing Heritage and Sun's agreement regarding Nimodipine); *id.* ¶¶ 378, 452 (alleging that Heritage and Actavis's agreement to raise prices for Glyburide/Metformin and Verapamil was communicated to Sun via text message); *id.* ¶¶ 391-414 (describing Heritage, Teva, and Sun's agreement to raise prices for Nystatin); *id.* ¶¶ 415-26 (describing Heritage and Sun's agreement to raise prices for Paromomycin).

necessary to their well-being, which gives Defendants significant pricing power and an incentive to collude.  *Id*. ¶¶ 164-67.  *Fourth*, Econazole has a unique active ingredient, chemistry, and pharmacokinetics compared with other antifungals in its class, which means patients lack a therapeutically equivalent substitute for Econazole and must purchase it regardless of price hikes.  *Id*. ¶¶ 168-69.  *Fifth*, generic Econazole products are commodity products because they are by definition bioequivalent (*i.e.*, interchangeable).  This means the primary mechanism through which manufacturers compete is price, which can drive manufacturers to conspire—as they did here—to fix prices.  *Id*. ¶¶ 170-73.  And *sixth*, Defendants' representatives had many opportunities to meet and conspire at industry trade shows, customer conferences, and other events.  *See supra* Section II.C.3.

Judge Rakoff recently found—on the basis of very similar facts in the generic drug industry—that end payor purchasers of Propranolol sufficiently alleged manufacturers benefited from market conditions conducive to conspiracy.  *Propranolol*, 249 F. Supp. 3d at 719-20.

## III.    TELIGENT'S INDIVIDUAL MOTION TO DISMISS FAILS

### A.    Plaintiffs Have Alleged Teligent Engaged in Parallel Pricing

As explained above, and in Plaintiffs' CCAC, all three Defendants' Econazole prices hovered just above cost for years prior to the conspiracy.  CCAC ¶ 75.  Then, after years of stable, rational pricing, all three Defendants, including Teligent, raised their Econazole prices to shockingly, irrationally high levels.  *Id.*  Teligent, moreover, kept its Econazole prices high even after Defendants Perrigo and Taro began to drop theirs.  *Id.*  Teligent's pricing behavior only makes sense if it had assurances from Perrigo and Taro that they would not lower their prices back to pre-conspiracy levels, otherwise it risked significant financial losses.  *See* CCAC ¶ 7.

Teligent's argument regarding its increased market share may not be resolved in the context of its motion to dismiss.  Teligent points to information regarding changes in its

Econazole market share during the conspiracy period found only in DPPs' complaints.  *See* Def. Teligent's Mem. of Law in Supp. of Individual Mot. to Dismiss All Econazole Actions Against Def. Teligent, Inc. ("Teligent's Br.") at 5.  There are no allegations in Plaintiffs' Complaint regarding Teligent's specific Econazole market share.  Consequently, Teligent's arguments regarding its own Econazole market share are improper and may not be resolved on a motion to dismiss.  *See, e.g.*, *Thorpe v. Dohman*, No. Civ.A.04-CV-1099, 2004 WL 2397399, at *1 (E.D. Pa. Oct. 22, 2004) ("As a general matter, a district court may not consider documents outside the pleadings when ruling on a motion to dismiss.").

Moreover, even if it were true that Teligent gained market share by pricing somewhat lower than its competitors,[16] that fact would not alone defeat Plaintiffs' allegations.  First, as explained above, Plaintiffs need not allege identical prices by all Defendants.  Second, Teligent's pricing was generally similar to its competitors in comparison to the previous baseline (*see* CCAC ¶ 75 (███████████████████████████)) and its alleged market share gain was modest even according to Teligent's own (improper) argument (*see* Teligent's Br. at 5 (arguing that DPPs allege that Teligent increased its market share from 7% to ███)).  Had the market been operating in a non-conspiratorial fashion, even modest price decreases should have led to a rapid race to the bottom; that did not happen—as Plaintiffs allege, Teligent, along with the other Defendants, continued to enjoy extremely high prices for many months.  CCAC ¶ 75.  Moreover, Teligent's ability to gain modest market share is consistent with the anticompetitive conduct unearthed by the States, wherein ostensible competitors reached agreements to ensure that all co-conspirators got a "fair share" of the market.  *See, e.g.*, State Compl. ¶¶ 14, 97-98.

---

[16] Teligent's argument that it raised its prices "only to approximately ███ of Perrigo's price" (Teligent's Br. at 4) is misleading and flatly inconsistent with the chart that Teligent cites in support; as the chart shows, Teligent's peak pricing was actually slightly *higher* than its competitors during the Class Period.  *See id.*

14

Finally, Teligent had the same motive to conspire as Perrigo and Taro—achieving record profits.  As Plaintiffs allege, Teligent's profits soared during the conspiracy period reaching record highs.  *See Wallach*, 814 F. Supp. 2d at 439 (holding plaintiffs satisfied *Twombly* by alleging defendants earned "record profits after" entering conspiracy).[17]

**B.**      **Plaintiffs Have Alleged Teligent Used in Person Meetings at Industry Events to Further the Econazole Conspiracy**

Plaintiffs plausibly allege that Teligent furthered the Econazole conspiracy through in person meetings with Defendants Perrigo and Taro at various trade association meetings and conferences, as well as at private events often organized around such events.  Non-members, including Defendants Taro and Teligent, frequently attended GPhA meetings, and they used such meetings to facilitate their conspiratorial communications and implement their anticompetitive schemes.  CCAC ¶¶ 116, 119.  Teligent President and CEO Jason Grenfell-Gardner, National Accounts Manager Shawn McMorrow, and other Teligent representatives participated in no fewer than ▆▆ specific trade association meetings and conferences, including but not limited to GPhA events, during which they conspired with executives and representatives from Defendants Perrigo and Taro.  *See id.* ¶¶ 73, 127-28, 132-34, 138-140.  Representatives from all three defendants, including Teligent, discussed their respective businesses and customers at lunches, cocktail parties, dinners, and golf outings that often accompanied these events.  *Id.* ¶ 146.  These events all took place in the months and years surrounding the beginning of Defendants' Econazole conspiracy.  *See id.* ¶¶ 73, 127-28, 132-34, 138-140.

---

[17] Teligent's citation to *Chocolate I*, 602 F. Supp. 2d at 577, is inapposite.  There, the court found the requisite motive to conspire for increased profits in light of a declining market and defendant's lackluster sales prior to the conspiracy.  Nothing in that case requires Plaintiffs to allege that Teligent enjoyed no Econazole profits prior to the conspiracy.  The prospect of outsized profits clearly constitutes a motive to conspire.  *See Wallach*, 814 F. Supp. 2d at 439.

FILED WITH REDACTIONS – PUBLIC VERSION

These allegations are sufficient to support Plaintiffs' claims that Teligent representatives attended the events described above and used them as opportunities to conspire about Econazole prices and market share.

Moreover, like Perrigo and Taro, Teligent's public statements during the conspiracy period applaud the lack of competition in Econazole pricing and boast of record profits enjoyed as a result of the conspiracy. *See id.* ¶¶ 97-100. Unlike the "very general statements" at issue in *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, 764 F. Supp. 2d 991, 1001 (N.D. Ill. 2011), Teligent's statements are specific to Econazole and Teligent's efforts to maximize revenues through price increases for its core products, such as Econazole.  *See* CCAC ¶¶ 97-100. When viewed in context, with all of Plaintiffs' allegations, these statements support an inference of collusion.  *See, e.g.*, *Domestic Airline Travel*, 221 F. Supp. 3d at 67.

### C.    Plaintiffs Need Not Allege that Teligent Is Currently Subject to Government Investigation

As Judge Rakoff recently found in the generic Propranolol antitrust litigation, even if "it is true that only one defendant has received such a subpoena, a conspiracy, by its nature, requires an agreement between two or more entities[.]"  *Propranolol*, 249 F. Supp. 3d at 723.  Thus, the subpoenas served on Defendant Perrigo, Defendant Taro, Taro's officers, and Taro's parent company Sun indicate "[t]he presence of an ongoing investigation into the same subject matter as alleged in the pleadings here" and Plaintiffs' allegations regarding this ongoing investigation "raise[] an inference of conspiracy."  *Id.* (citing *Starr*, 592 F.3d at 324).

### D.    Teligent's Size Does Not Immunize It from Liability for Antitrust Violations

Small companies are not immune from state and federal antitrust liability. Teligent does not cite to, and Plaintiffs are not aware of, any authority holding otherwise.  Moreover, the number of people Teligent employs has no bearing on the plausibility of Plaintiffs' allegations

and is therefore irrelevant to the 12(b)(6) analysis required here.  At bottom, Teligent asks this Court to heighten *Twombly*'s plausibility standard in light of Teligent's small size.  But the Third Circuit has expressly ruled "that it is inappropriate to apply *Twombly*'s plausibility standard with extra bite in antitrust and other complex cases."  *West Penn*, 627 F.3d at 98.

## IV.    PLAINTIFFS HAVE STANDING TO SUE

### A.    Plaintiffs Have Article III Standing[18]

Defendants concede that Plaintiffs have Article III standing to pursue claims under the laws of those jurisdictions where they paid for the generic drugs in question.  Instead, Defendants make a narrower claim: Plaintiffs lack Article III standing to assert claims under the laws of the few jurisdictions where the named Plaintiffs have not specifically alleged purchases or reimbursements. In other words, Defendants contend that the named Plaintiffs lack standing to pursue the claims of absent class-members that made purchases or reimbursements in different jurisdictions than the named plaintiffs.  Defendants' argument is incorrect because: (1) Plaintiffs face imminent threat of a concrete and particularized injury-in-fact in *all* jurisdictions;[19] and (2) in any event, a motion on the pleadings is not the proper or most efficient juncture to resolve this question, which is more suited to resolution at class certification.

Recent Third Circuit precedent makes clear that Plaintiffs satisfy the requirements of Article III.  "The injury-in-fact requirement is 'very generous' to claimants, demanding only that the claimant 'allege[] some specific, "identifiable trifle" of injury.'"  *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted).  Plaintiffs must allege that they suffered "an

---

[18] *See* Defs. EPP Br. at 11-14.

[19] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) ("The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.") (citation omitted).

invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citation omitted). Plaintiffs' allegations of financial harm "easily satisfy each of these components, as financial harm is a 'classic' and 'paradigmatic form[]'of injury in fact," *id.* at 163, to a "legally protected interest that is 'concrete and particularized.'" *Id.* at 169. Thus, Plaintiffs have Article III standing to proceed. That should end the inquiry.[20]

Yet Defendants ask the Court to dismiss various claims. The Court should reject this request. *First*, the named plaintiffs face imminent threat of injury even in those jurisdictions where they have not yet identified purchases or reimbursements. The named plaintiffs provide health coverage for hundreds of thousands of beneficiaries who are located throughout all U.S. states and territories. The persistent elevated market prices for the drugs in question make it likely that the named plaintiffs will at some point be required to pay supracompetitive prices in all jurisdictions alleged. This is not a hypothetical or speculative concern. For example, in the Doxycycline case, the named plaintiffs already have confirmed that they made reimbursements (and suffered *actual* injury) on behalf of beneficiaries in every jurisdiction. The question is not whether, but when the named plaintiffs will be required to reimburse for purchases at inflated prices.[21] *Second*, although case law is mixed on this issue, the sounder precedent—including in

---

[20] *See Cottrell*, 874 F.3d at 162 n.5 ("In the context of class actions, Article III standing is determined *vis-a-vis* the named parties.") (internal citation and quotation marks omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306-07 (3d Cir. 1998) ("*Prudential*") ("'Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense.'") (quoting *Newberg on Class Actions* § 2.05 at 2-29 (3d ed. 1992)).

[21] Two additional practical considerations arise here. *First*, Plaintiffs have made a good faith effort to discover and allege all relevant past purchases and reimbursements, but it is not unreasonable to assume that Plaintiffs will identify additional transactions in additional jurisdictions during discovery (either past transactions that were overlooked, or new transactions

this Circuit—holds that "plaintiffs' standing to pursue state law claims on behalf of absent class

members is not an Article III jurisdictional issue" and plaintiffs need not "allege an in-state

injury" because "Article III's injury-in-fact requirement 'has nothing to do with the text of the

statute relied upon.'"  *In re Thalomid & Revlimid Antitrust Litig.*, No. CV 14-6997 (KSH)

(CLW), 2015 WL 9589217, at *19 (D.N.J. Oct. 29, 2015) ("*Thalomid*") (quoting *Steel Co. v.

Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)).[22]

Defendants base their Article III standing argument principally on *In re Wellbutrin XL

Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009).  The *Wellbutrin XL* case, however, is at odds

with the majority of cases in this Circuit and cannot be reconciled with Third Circuit precedent.

For example, the courts in *Liquid Aluminum*, *Thalomid*, *Miller*, *Eggs* and *Chocolate I* each

determined—consistent with Third Circuit and Supreme Court law—that once a named plaintiff

---

that have occurred since Plaintiffs last collected data).  <u>Second</u>, given the evolving and
expanding nature of this litigation, additional Plaintiffs are likely to join and add transactions in
additional jurisdictions.  Rather than dismiss claims that may be re-asserted by new plaintiffs it
will be vastly more efficient to resolve the viability of all the legal claims under Rule 12, but
assess the viability of the named Plaintiffs to pursue those claims at class certification under Rule
23.  As described below, this accords with the prevailing view in the Third Circuit.

[22] Numerous decisions in this Circuit are in accord. *See In re Liquid Aluminum Sulfate
Antitrust Litig.*, No. CV 16-MD-2687 (JLL), 2017 WL 3131977, at *19 (D.N.J. July 20, 2017)
("*Liquid Aluminum*") ("the United States Supreme Court has made it clear that District Courts
should defer addressing standing questions concerning putative class members who are not
named until after class certification when certification of the class is 'logically antecedent' to the
issue of standing."); *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *3
(D.N.J. June 29, 2015) ("*Miller*") ("the question of whether an injured Plaintiff can bring a claim
under the laws of a state in which he does not reside is not a question of Article III constitutional
standing, but rather a non-jurisdictional question of statutory standing."); *In re Processed Egg
Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 886-87 (E.D. Pa. 2012) ("*Eggs*") ("To inject the
condition that Plaintiffs must satisfy certain elements of the state antitrust claims into a
constitutional standing analysis . . . result[s] in an impermissible out-of-the-box merits inquiry.");
*Chocolate I*, 602 F. Supp. 2d at 579-80 ("[P]laintiffs' capacity to represent individuals from
other states depends upon obtaining class certification, and the standing issue would not exist but
for their assertion of state law antitrust claims on behalf of class members in these states.
Therefore, the standing issues arise from the plaintiffs' attempts to represent the proposed class.
These class certification issues are 'logically antecedent' to the standing concerns, and the court
will defer ruling on the latter until class certification proceedings.") (citations omitted).

FILED WITH REDACTIONS – PUBLIC VERSION

establishes an injury-in-fact, they have Article III standing for the litigation regardless of the

state in which their injury occurred.  This is consistent with the holdings of numerous other

courts.[23] By contrast, Defendants' brief is conspicuously bereft of controlling Third Circuit case

law and ignores relevant and recent district court cases from this Circuit.[24]

---

[23] *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 16-C-7176, 2017 WL 5574376, at
*24 (N.D. Ill. Nov. 20, 2017) ("*Broiler Chicken*") (finding Article III standing and allowing
plaintiffs' "claims under laws for states in which they do not allege any of the named plaintiffs
purchased chicken"); *In re Asacol Antitrust Litig.*, No. 15-CV-12730-DJC, 2017 WL 5196381, at
*20 (D. Mass. Nov. 9, 2017) (finding Article III standing for named plaintiffs and certifying
indirect purchaser class that included claims under state laws where named plaintiffs had not
made purchases; "[T]he named plaintiffs must assert an injury in fact–but they need not assert
the same claims as the putative class members that, here, arise under the laws of different states.
To require more for Article III standing from the named plaintiffs is to jump forward to a Rule
23 certification analysis about whether the named plaintiffs' claims are typical and common of
those of the class and whether the named plaintiffs are adequate representatives of the class."); *In
re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016) ("*Opana*") ("As long as
one member of the class has a plausible claim to have suffered an injury that is fairly traceable to
the challenged conduct and likely to be redressed by a favorable decision, the requirements of
Article III standing are satisfied."); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v.
CVS Health Corp.*, 221 F. Supp. 3d 227, 236 (D.R.I. 2016) ("This question [of Article III
standing] would be appropriately, and more efficiently, addressed at the class certification
stage."); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC,
2015 WL 5458570, at *14 (D. Mass. Sept. 16, 2015) ("*Solodyn*") (denying dismissal of state
claims for states where no named plaintiff resided or was harmed where it was undisputed that
named plaintiffs had Article III standing for their claims); *Auto Parts III*, 50 F. Supp. 3d at 884
(denying dismissal of state claims where no named plaintiff resided in those states); *In re Nexium
(Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404-07 (D. Mass. 2013) ("*Nexium*") ("All
members of the putative class have a common interest in litigating claims arising from the
Defendants' allegedly anticompetitive collusion designed to cause the End-Payors to pay
supracompetitive prices across the several states."); *In re DDAVP Indirect Purchaser Antitrust
Litig.*, 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012) ("*DDAVP*") (joining "growing consensus" that
"find that class certification is logically antecedent to the issue of standing").

[24] *See generally Wellbutrin XL* (neglecting to discuss *Prudential*). *Wellbutrin XL* and
Defendants' two other discussed cases, *In re Niaspan Antitrust Litigation*, 42 F. Supp. 3d 735,
758-59 (E.D. Pa. 2014) ("*Niaspan*") and *In re Suboxone (Buprenorphine Hydrochloride &
Naloxone) Antitrust Litigation*, 64 F. Supp. 3d 665, 692-94 (E.D. Pa. 2014) ("*Suboxone*"),
predate *Cottrell*, *Liquid Aluminum, Thalomid* and *Miller*. Like *Wellbutrin XL*, neither *Niaspan*
nor *Suboxone* specifically addressed the Third Circuit's holding in *Prudential*. In sum, the
weight of precedent in the Third Circuit holds that named plaintiffs have Article III standing to
pursue claims on behalf of absent class members with purchases in different jurisdictions.

With the weight of relevant law stacked against them, Defendants' make a last ditch Due Process argument.  The two cases cited by Defendants highlight the implausibility of their claim. Neither case discusses standing or Article III.  Neither is a class case.  Neither is from this Circuit.  In *Soo Line R. Co. v. Overton*, 992 F.2d 640, 644 (7th Cir. 1993) the court reviewed a summary judgment decision in a wrongful death suit and affirmed the district court's resolution of a choice of law question. Similarly, in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1821 SI, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) the court considered whether the law of one jurisdiction (where the product was purchased) or another (where the product was delivered) should apply to the plaintiff's claim.  In both cases the Due Process inquiry focused on which law was fair to apply to a given transaction or event.  There is no such question here. Plaintiffs have alleged that Defendants' products were sold in every jurisdiction at inflated prices.  The question is not whether Defendants can be held accountable under the laws of each jurisdiction consistent with Due Process; the question is whether the named plaintiffs are the proper parties to do so. That is question to be resolved under Rule 23, not Rule 12.[25]

### B.    Plaintiffs Have Antitrust Standing[26]

Defendants invoke *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*") to challenge the "antitrust standing" of named plaintiffs who are third-party payers ("TPPs")—*e.g.*, health and welfare benefit plans that indirectly purchased and paid for some or all of the purchase price of the generic drugs at issue.

Preliminarily, Defendants radically overstate the applicability of *AGC* to TPPs' claims.

---

[25] *See Prudential*, 148 F.3d at 307 ("once the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.'") (citation omitted); *Liquid Aluminum*, 2017 WL 3131977, at *19; *Thalomid*, 2015 WL 9589217, at *19.

[26] *See* Defs. EPP Br. at 7-11.

FILED WITH REDACTIONS – PUBLIC VERSION

*First*, TPPs' claim for injunctive relief under Section 16 of the Clayton Act is not subject to the same *AGC* requirements because injunctive relief poses no risk of duplicative recovery.[27]

*Second*, Defendants' contention that *AGC* always applies to both federal and state law antitrust claims is erroneous and belied by the multitude of decisions declining to apply *AGC* to state law antitrust claims.  *See* Appendix A.[28]  In any event, TPPs satisfy each of the *AGC* factors.[29]

### 1.    Defendants Directly and Proximately Caused Plaintiffs' Injuries

At the outset, Plaintiffs note two obvious points.  *First*, Defendants ignore that End-Payer Plaintiffs (TPPs and consumers)—as their name implies—are at the end of the distribution chain, and thus bear the brunt of the overcharge for these drugs.[30]  *Second*, the drugs at issue here are manufactured as tablets or capsules of a specified dosage.  They do not change form as they go through the chain of distribution.  They are not components of some larger product (as in the majority of cases cited by Defendants).[31]  The tablets and capsules that the Defendants made are

---

[27] *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399 (3d Cir. 2000) ("*Warfarin I*") ("While relief sought pursuant to section 4 of the Clayton Act requires proof of loss and any damages proven are trebled, injunctive relief under section 16 only requires a threat of loss.").

[28] Appendix A responds to Defendants' appendices on *AGC* and states that purportedly conform their antitrust law to federal law.  Most states either do not follow federal law, do not apply the *AGC* factors, or do not apply the *AGC* factors to exclude indirect purchaser actions.

[29] Defendants proceed on the assumption that if *AGC* is applied it will bar indirect purchaser claims. This is a common defense tactic that is commonly rejected by courts. *See, e.g.*, *Broiler Chicken*, 2017 WL 5574376, at *28 & n.17 ("The Court finds that any state with an *Illinois Brick* repealer would reject application of *AGC* [to preclude indirect purchaser suits]")*; In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *6 (N.D. Cal. Oct. 2, 2014) ("*Lithium Ion Batteries*") (rejecting assertion that application of *AGC* bars state-law claims); *Auto Parts II*, 29 F. Supp. 3d at 1002 ("even if *AGC* applies, the pleadings here are sufficient").

[30] *See, e.g.*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) ("*Illinois Brick*") (conceding that indirect purchasers are the ones "actually injured by antitrust violations"); *id.* at 749 (Brennan, J., dissenting) ("the brunt of antitrust injuries is borne by indirect purchasers").

[31] *See, e.g.*, *Supreme Auto Transp. LLC v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1040 (N.D. Ill. 2017) (claims by purchasers of products that included parts made from allegedly price-fixed steel that could not be traced to a defendant manufacturer); *In re Refrigerant Compressors*

FILED WITH REDACTIONS – PUBLIC VERSION

precisely what Plaintiffs paid for.  The reality of the market is unassailable: when Defendants

*raise* prices, End-Payers *pay* higher prices. Put another way, but-for Defendants' collusive price

increases, Plaintiffs would not have paid the overcharges they seek to recoup here. Causation is

clear, obvious and direct.  In sum, Defendants' argument is a red-herring, long ago rejected by

the Third Circuit: "TPPs, like individual consumers, suffer[] direct economic harm when, as a

result of [defendant's anticompetitive conduct], they pa[y] supracompetitive prices. . . ."  *In re*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) ("*Warfarin II*").[32]

### 2.    TPPs' Injuries are Contemplated by the Antitrust Laws

The gravamen of TPPs' complaint is that Defendants conspired to fix the prices of the

very same generic pharmaceuticals that TPPs paid for, thereby causing TPPs economic harm.

This is *the* quintessential antitrust injury.[33]  The Third Circuit is explicit on this point, describing

overcharges paid by TPPs as a result of anticompetitive conduct as follows: "It is difficult to

imagine a more formidable demonstration of antitrust injury."  *Warfarin I*, 214 F.3d at 401.

Defendants' argument to the contrary is far outside the bounds of well-established precedent.[34]

---

*Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756, at *12 (E.D. Mich. Apr. 9, 2013)
(claims by purchasers of refrigerators that included pre-installed and allegedly price-fixed
compressors); *In re Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072,
1089 (N.D. Cal. 2007) ("*D-RAM I*") (claims by purchasers of computers that included pre-
installed and allegedly price-fixed semiconductor memory chips); *Crouch v. Crompton*, No. 02
CVS 4375, 2004 WL 2414027, at *21 (N.C. Super. Ct. Oct. 28, 2004) ("*Crouch*") (claims by
purchasers of tires made with allegedly price-fixed rubber-processing chemicals); *Loeb*
*Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 485-86 (7th Cir. 2002) ("*Loeb*") (claims by
"scrap dealers" that bought recycled copper, which was then continually augmented in an
"exceedingly complex" distribution chain).

[32] *See also SigmaPharm, Inc. v. Mut. Pharm. Co.*, 772 F. Supp. 2d 660, 676 (E.D. Pa.)
(Rufe, J.) (noting that "third-party payers, are more directly injured by the alleged conspiracy
because they paid inflated prices for the drug").

[33] *Cf. NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 100 (1984) (recognizing
horizontal price fixing as "perhaps the paradigm of an unreasonable restraint of trade").

[34] Defendants' argument is premised on a misreading of *Steamfitters Local Union No.*
*420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) ("*Steamfitters*") that the

### 3.   Plaintiffs' Injuries Are Direct and Non-Speculative

Defendants argue that the chain of distribution in the pharmaceutical industry is too long and complex to support antitrust standing for TPPs.  Were that the case, it would preclude all end-payer pharmaceutical actions. But courts overwhelmingly disagree and have allowed such cases to proceed (hence Defendants' lack of citations on this point).  The majority of courts, including in this district, recognize that the pharmaceuticals distribution chain is short, direct and well-understood.[35]  Defendants' attempts to create factual disputes on this point (in addition to being wrong) are inappropriate at this juncture.[36]

### 4.   TPPs are Direct Victims and Can Efficiently Enforce their Claims

Defendants' assert that the direct purchasers (DPPs) in this litigation are more "direct victims" and thus EPP claims are barred.  This is incompatible with the existence of *Illinois Brick* repealer laws (upon which Plaintiffs rely), which the Supreme Court expressly permitted in

---

Third Circuit already has dispelled multiple times.  In *Steamfitters*, the TPP plaintiffs brought novel RICO and antitrust claims to recoup healthcare costs incurred as a result of smoking-related illnesses suffered by their insureds.  The TPPs in *Steamfitters* did not purchase or reimburse for tobacco products (or any other product) made by Philip Morris.  171 F.3d at 927 (basing *AGC* analysis on fact that plaintiffs "are not consumers forced to pay higher prices for tobacco products").  In contrast, Plaintiffs here have been forced to pay higher prices for Defendants' price-fixed products. In *Warfarin II*, the Third Circuit expressly addressed this distinction, which Defendants ignore.  391 F.3d at 531 (distinguishing *Steamfitters* and *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000)). The Third Circuit again distinguished *Steamfitters* in *In re Avandia Marketing, Sales Practices & Prod. Liability Litig.*, 804 F.3d 633 (3d Cir. 2014), where the court again affirmed TPP standing.

[35] *See, e.g., Suboxone*, 64 F. Supp. 3d at 698 ("The End Payors also point out that they have purchased the product and/or provided reimbursement to their members who have purchased the product. This is not the situation . . . where there are numerous links in the causal chain."). *See also Propranolol*, 249 F. Supp. 3d at 725 ("the chain of distribution in the pharmaceutical industry is short, direct, and well-understood"); *In re Asacol Antitrust Litig.*, No. CV 15-12730-DJC, 2017 WL 53695, at *3 (D. Mass. Jan. 4, 2017) ("*Asacol*") (same).

[36] *See Warfarin I*, 214 F.3d at 398 (reversing dismissal of antitrust claims for lack of antitrust standing where district court failed to construe facts in the plaintiffs' favor); *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 503 (E.D. Pa. 2006) ("*D.R. Ward*") ("the discovery process is necessary to develop an array of factual issues that bear upon the directness of the plaintiffs' injury").

FILED WITH REDACTIONS – PUBLIC VERSION

*California v. ARC Am. Corp.*, 490 U.S. 93, 105–06 (1989).  Numerous courts have recognized

that Defendants' argument is unsound.[37]  Indeed, direct purchaser and indirect purchaser

pharmaceutical antitrust cases regularly proceed in tandem, even to trial.[38]

### 5.      There Is No Risk of Complex Apportionment of Damages or Inappropriate Duplicative Recovery

Defendants fail to describe, other than through speculation, why damages would be

difficult to ascertain.  Courts routinely consider evidence in pharmaceutical indirect purchaser

cases to determine whether damages are traceable and quantifiable, but they do so at class

certification and summary judgment.[39]  The cases that Defendants invoke on this point—*Loeb*,

*Steamfitters*, and *Crouch*—merely rehash their flawed causation argument.  As for duplicative

recovery, there is no dispute that allowing DPP and EPP suits to proceed creates some risk of

this.  As recognized in *Propranolol*, however, "the general view among district courts" is that

---

[37] *See, e.g.*, *Suboxone*, 64 F. Supp. 3d at 698  ("It would be inconsistent for a state to allow indirect purchasers to bring antitrust claims, only for the courts to cursorily dismiss those claims on antitrust standing grounds simply because they have been brought by indirect purchasers."); *D.R. Ward*, 470 F. Supp. 2d at 502-04 (finding fourth *AGC* factor irrelevant where state law permits indirect claims); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543 (D.N.J. 2004) ("*K-Dur*"); *Lithium Ion Batteries*, 2014 WL 4955377 at *11.

[38] *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 309 F.R.D. 107, 110-11 (D. Mass. 2015) (describing co-trial of indirect and direct purchasers of prescription pharmaceuticals); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *15, *27 (N.D. Cal. Feb. 21, 2017) (certifying indirect and direct purchaser actions in coordinated proceedings).

[39] *See, e.g.*, *In re Auto Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *17 (E.D. Mich. June 6, 2013) ("*Auto Parts I*") ("Because IPPs have alleged that they can trace overcharges through the distribution chain, they have satisfied this *AGC* factor."); *D.R. Ward*, 470 F. Supp. 2d at 503-05 ("defendants have failed to articulate, with specificity, why the measurement of plaintiffs' damages would be unascertainable and why this Court would lack the capacity to scrutinize the evidence" to determine plaintiffs' damages); *K-Dur*, 338 F. Supp. 2d at 543 (finding damages claims not speculative for antitrust standing purposes "because they are readily discernible, *e.g.*, as represented by higher prices paid").

FILED WITH REDACTIONS – PUBLIC VERSION

states which allow indirect purchaser suits "'have necessarily made the policy decision that duplicative recovery may permissibly occur.'"[40]

## V.   PLAINTIFFS HAVE STATED CLAIMS UNDER STATE ANTITRUST LAWS

Defendants contest the validity of certain claims under state antitrust law. EPPs respond to all such arguments below and in Appendices A and B.

### A.   Plaintiffs Allege Viable Illinois, Rhode Island and Vermont Antitrust Claims

Defendants' arguments that Illinois, Rhode Island and Vermont do not provide for or otherwise limit indirect purchaser antitrust suits are incorrect.

**Illinois** (Defs.' EPP Br. at 15-16):  The Illinois Antitrust Act expressly permits indirect purchaser suits: "[n]o provision of th[e] Act shall deny any person who is an indirect purchaser the right to sue for damages."  740 Ill. Comp. Stat. Ann. 10/7(2).  Defendants mistakenly seize upon language in the Act that prohibits class actions "*in any court of this State*."  740 Ill. Comp. Stat. Ann. 10/7(2) (emphasis added).  But a federal court sitting in Pennsylvania is not a court "of" the state of Illinois.[41]  Moreover, *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("*Shady Grove*") requires that federal courts sitting in diversity must apply federal procedural rules, including Fed. R. Civ. P. 23.  Recent federal courts confronting this question have recognized that Rule 23 permits Illinois antitrust class actions to

---

[40] 249 F. Supp. 3d at 726 (quoting *D-RAM I*, 516 F. Supp. 2d at 1093) (collecting cases).

[41] *See, e.g.*, *Ransom v. Marrese*, 524 N.E.2d 555, 559 (Ill. 1988) (Illinois state court applying Indiana law was not a court "of" the state of Indiana under Indiana statute that applied to actions commenced "in any court of this State"); *Piechur v. Redbox Automated Retail, LLC*, No. 09-cv-984 (JPG), 2010 WL 706047, at *4 (S.D. Ill. Feb. 24, 2010) (holding, in interpreting forum selection clause that limited actions to "the courts of the state of Illinois," that an Illinois federal court "may sit *in* the state of Illinois, [but] is not a court *of* the state of Illinois").  *See also In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2016 WL 4204478, at *5 (D. Conn. Aug. 9, 2016) ("*Aggrenox*") (noting that it is "not obvious" that the Illinois prohibition applies to a federal court sitting in Connecticut).

FILED WITH REDACTIONS – PUBLIC VERSION

proceed.[42]  The cases cited by Defendants either neglect to consider *Shady Grove*, or implausibly extend its holding.[43]  Even under the reading of *Shady Grove* adopted by Defendants, the class action bar is not part of Illinois' "framework of substantive rights and remedies," 559 U.S. at 419 (Stevens, J. concurring), because indirect purchasers have the right to seek damages, 740 Ill. Comp. Stat. Ann. 10/7(2).  A class action does not alter that right; it is merely a procedural mechanism that affects how those claims proceed in federal court.  *See Aggrenox*, 2016 WL 4204478, at *6.

**Rhode Island** (Defs.' IRP Divalproex Br. at 20 n.14):  Rhode Island amended its laws to enact an *Illinois Brick* repealer provision effective July 15, 2013.  R.I. Gen. Laws § 6-36-7(d).  Defendants contend that antitrust damages are available only after that date.  This is incorrect.  Consistent with U.S. and Rhode Island Supreme Court precedent, the repealer provision should

---

[42] *See Broiler Chicken*, 2017 WL 5574376, at *30 (discussing *Shady Grove*, collecting cases, and permitting Illinois indirect purchaser antitrust class claims to proceed); *Liquid Aluminum*, 2017 WL 3131977 at *25 (same); *Propranolol*, 249 F. Supp. 3d at 728 ("the Court is persuaded that this [Illinois] state procedural rule does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action.") (citing *Shady Grove*); *Aggrenox*, 2016 WL 4204478, at *5; *Lithium Ion Batteries*, 2014 WL 4955377 at *21 (denying motion to dismiss and holding that Illinois' class action bans "are procedural, not substantive, and that application of Rule 23 to them would not modify any substantive right.").

[43] *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 530 (E.D. Pa. 2010) ("*Flonase*") predates *Shady Grove* and cannot provide guidance here. Neither can *Niaspan*, 42 F. Supp. 3d at 764 nor *Suboxone*, 64 F. Supp. 3d at 700, both of which adopt the reasoning of *Flonase* and neglect to discuss *Shady Grove*. The other cases—*Solodyn*, 2015 WL 5458570, at *17; *Opana*, 162 F. Supp. 3d at 723; and *Nexium*, 968 F. Supp. 2d at 409—piggyback on *Wellbutrin XL*, 756 F. Supp. 2d at 673 and *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) ("*Digital Music*"), each of which misinterprets *Shady Grove* by treating Justice Steven's concurrence as controlling precedent. Because Justice Stevens's concurrence did not articulate the narrowest holding joined by a majority of the Court, it is error to interpret it as controlling. *See Aggrenox*, 2016 WL 4204478, at *5-6 (the Stevens concurrence "is not a logical subset of the opinion of the other Justices in the majority" because the other Justices "explicitly reject [its] rationale"). Finally, the emphasis in these cases on the location of the procedural rule within the statutory framework mistakenly elevates form over substance. *Id.* at *5-6; *cf. Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331,1336 (11th Cir. 2015) ("how a state chooses to organize its statutes affects the analysis not at all… the question of whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance…").

FILED WITH REDACTIONS – PUBLIC VERSION

be applied retroactively.[44]  Prior to the 2013 amendment, Rhode Island allowed "*[a]ny* person or

public body" who was injured to seek damages.  *See* 2013 R.I. Pub. Laws 365, 2013 R.I. SB 840

(emphasis added).  The amendment was a non-substantive clarification that Rhode Island does

not follow *Illinois Brick*: "the fact that a person or public body has not dealt directly with the

defendant shall not bar or otherwise limit recovery."  *Id.*  Thus, the amendment should be applied

retroactively.[45]

**Vermont** (Defs.' EPP Digoxin Br. at 29 n.18):  In a footnote, Defendants advance the

mistaken argument that Vermont only has a consumer protection statute, not an antitrust statute,

and does not permit indirect purchaser antitrust claims.  In fact, Vermont combines its antitrust

and consumer protection provisions into a single statute that plainly prohibits *both* antitrust and

consumer protection violations.  9 V.S.A. § 2453a (declaring unlawful "[u]nfair methods of

competition" *and* "unfair or deceptive acts or practices in commerce").  The statute also

expressly prohibits collusion, market allocation and price fixing; addresses "Antitrust remedies";

and authorizes indirect purchaser antitrust suits.  9 V.S.A. §§ 2453a, 2451a(h), 2465.

### B.  **Plaintiffs Satisfy State Citizenship and Residency Requirements**[46]

The Class includes end-payers that made purchases in each U.S. state and territory at

supracompetitive prices.  This is sufficient to satisfy the statutory standing requirements of all

---

[44] It is clear that remedial statutes may be retroactively applied.  *See Winfree v. N. Pacific Ry. Co.*, 227 U.S. 296, 301 (1913); *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 273 (1994). *See also Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367, 371 (R.I. 1994) ("remedial and procedural statutes, which do not impair or increase substantive rights but rather prescribe methods for enforcing such rights, may be construed to operate retroactively.").

[45] Plaintiffs have stated claims under Rhode Island consumer protection law, which separately provides Plaintiffs the right to bring claims based on anticompetitive conduct prior to July 15, 2013. *See, e.g.*, *Auto Parts II*, 29 F. Supp. 3d at 1024; *Chocolate I*, 602 F. Supp. 2d at 538; *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129, 1144-45 (N.D. Cal. 2008) ("*D-RAM II*").

[46] *See* Defs.' EPP Br. at 16.

28

relevant jurisdictions.  Defendants variously suggest that South Dakota and Utah (both of which expressly permit indirect purchaser suits) depart from this rule.  But nothing in the relevant statutes require that the *named plaintiffs* in class actions be citizens or residents – indeed, they say nothing at all about class action procedure.  Defendants cite neither statute nor case law to suggest that South Dakota imposes a citizenship requirement.[47]  Utah's antitrust statute does limit damages suits to indirect purchasers that are "a citizen . . . or a resident of this state."  Utah Code Ann. § 76-10-3109(1)(a).  But, as alleged by Plaintiffs and recognized recently in *Liquid Aluminum*, "members of the putative class presumably include Utah citizens and residents," and their claims should be permitted to proceed.  2017 WL 3131977, at \*28.[48]

## C.   Plaintiffs Provided Notice to Defendants and State AGs Where Required[49]

Defendants assert that Plaintiffs are required to send pre-suit or post-suit notices to Defendants or to state attorneys general under various state law provisions.  *First*, Plaintiffs did send notices as required.  *See* Appendix H: Declaration of Adam J. Pessin ("Pessin Decl.").  *Second*, Plaintiffs' adherence to the notice requirements is not mandatory because the states' procedural rules are superseded by federal procedural rules.  *See generally*, *Shady Grove* and

---

[47] The cases cited by Defendants were dismissed on Article III standing grounds, not for lack of state residency. *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 211-13 (E.D. Pa. 2009); *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12–cv–169, 2013 WL 5503308, at \*12 (D.N.J. Oct. 2, 2013).

[48] *See also In re Asacol Antitrust Litig.*, No. 15-CV-12730-DJC, 2016 WL 4083333 at \*13 (D. Mass. July 20, 2016) (same).  The cases cited by Defendants actually support Plaintiffs' position here: in *Nexium* the plaintiffs were given leave to replead because the complaint "fail[ed] to plead that *members of the putative class* are citizens or residents of Utah," not because the *named plaintiffs* were not citizens or residents of Utah. 968 F. Supp. 2d at 410 (emphasis added).  In *Aggrenox* the Utah claims were dismissed on Article III standing grounds, not for lack of state residency.  94 F. Supp. 3d 224. The only cases Defendants cite that dismissed on the basis of state residency—*Niaspan*, 42 F. Supp. 3d at 759-60 and *Opana*, 162 F. Supp. 3d at 725—contain virtually no analysis.

[49] *See* Defs.' EPP Br. at 16-17

FILED WITH REDACTIONS – PUBLIC VERSION

discussion *supra*.[50]  And, in any event, failure to comply with notice provisions is not grounds

for dismissal, which would inconsistent with the remedial purposes of the states' statutes.[51]

### D.  Defendants' Misconduct Had Substantial In-State Effects[52]

It is well-settled that allegations of a nationwide antitrust violation satisfy "intrastate"

statutory requirements where there are also allegations that the impact of the conduct was felt

within each state.[53]  State statutes do not require that the anticompetitive *conduct* (*i.e.*, the act of

conspiring) occur within the state, so long as the adverse *effects* are felt within the state.

Moreover, the alleged effects need not occur entirely or even predominately within a state to

meet the requirement.[54]  This is true for each of the states referenced in Defendants' motion

(with the exception of Alabama).[55]  *See* Appendix B (collecting cases on intrastate effects).

---

[50] *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997) (holding that pre-filing notice provision in Wisconsin statute is procedural and therefore superseded by Rule 23)

[51] *See, e.g.*, *Propranolol*, 249 F. Supp. 3d at 728 n.24 (dismissal not required for failure to comply with Hawaii's procedural notice rule); *In re Aftermarket Filters Antitrust Litig.*, No. 08-C-4883 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009) ("*Filters*"); *Aggrenox*, 94 F. Supp. 3d at 253-54 (procedural limitations in Hawaii antitrust act, including pre-suit notice requirements, do not apply in federal court under *Shady Grove*).  *See also Broiler Chicken*, 2017 WL 5574376, at *29 (declining to dismiss Arizona and Rhode Island antitrust claims notwithstanding late notice to attorneys' general by plaintiffs). In addition, under Hawaii law, the attorney general is only authorized to bring suit on behalf of natural persons; accordingly, TPP claims are outside the ambit of the notice requirements.

[52] *See* Defs.' EPP Br. at 14-15.

[53] *See, e.g.*, *Broiler Chicken*, 2017 WL 5574376, at *29 ("In light of the obvious fact that Broilers are purchased in substantial numbers throughout the United States, these allegations plausibly establish "substantial" intra state effects[.]"); *Digital Music*, 812 F. Supp. 2d at 408; *Sheet Metal Workers Local 441 v. GlaxoSmithKline PLC*, 737 F. Supp. 2d 380, 393-402 (E.D. Pa. 2010) ("*Sheet Metal Workers*"); *Suboxone*, 64 F. Supp. 3d at 698-99; *Solodyn*, 2015 WL 5458570 at *16.

[54] *See In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (noting that there are "virtually no sales" anywhere in the United States that are wholly intrastate); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665-70 (E.D. Mich. 2000) ("*Cardizem*") (rejecting argument that state antitrust statutes only apply to conduct that is "wholly or predominately intrastate in character"); *Aggrenox*, 94 F. Supp. 3d at 253.

[55] Plaintiffs withdraw their Alabama antitrust claims.

Defendants also argue that Plaintiffs do not make sufficiently specific factual allegations to connect Defendants' conspiracy to each state.  But the Complaint specifically alleges with respect to each state that, as a result of the conspiracy, class members made purchases at supracompetitive prices within the state; price competition was suppressed within the state; and prices were raised, fixed and maintained within the state.  This is all that is required.[56]

## VI.   PLAINTIFFS HAVE STATED CONSUMER PROTECTION CLAIMS

Defendants contest the validity of certain state consumer protection claims.  Plaintiffs respond to all such arguments below and in Appendices C and D.

### A.   Plaintiffs Have Alleged Facts Establishing the Elements of Each Claim[57]

The Complaint contains detailed and extensive factual allegations demonstrating that Defendants engaged in an unfair, deceptive and unconscionable scheme to fix prices and allocate markets, thereby causing harm to consumers and third-party payers in each state, who paid supracompetitive prices and were deprived of the benefits of free and open competition.  All of

---

[56] *See Cardizem*, 105 F. Supp. 2d at 666-67 (allegations that Plaintiffs paid supracompetitive prices for in-state purchases sufficient); *Suboxone*, 64 F. Supp. 3d at 700 (allegations that conduct foreclosed retailers from offering cheaper products "inside each respective state;" "directly impacted and disrupted commerce;" and "forced [end-payors] to pay supracompetitive prices" found sufficient); *Solodyn*, 2015 WL 5458570 at *16 (allegations that "retailers within each state were foreclosed from offering less expensive" product to end-payors found sufficient); *Auto Parts I*, 2013 WL 2456612 at *20 (allegations of in-state purchases of price-fixed products sufficient); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411-12 (D. Del. 2007) (allegations that price competition restrained and prices artificially inflated in state sufficient); *Liquid Aluminum*, 2017 WL 3131977 at *24-25 (allegations that defendants' conduct impacted plaintiffs in their home states is sufficient). Defendants' cited case, *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) ("*Cast Iron Soil Pipe*") is an outlier, and contrary to numerous cases that find such allegations sufficient. *See also* Plaintiffs' Appendix B.

[57] *See* Defs.' EPP Br. at 17-18.

the Complaint's allegations are incorporated into the state consumer protection claims.[58]  The

Complaint also outlines the necessary elements under each state consumer protection statute and

ties those factual allegations to the specific legal requirements in each state. These allegations are

more than sufficient to state claims under the state consumer protection statutes.[59]  Moreover,

Plaintiffs' consumer protection claims are not merely "repackaged" antitrust claims;

anticompetitive conduct is actionable under state consumer protection statutes.[60]  Where states

impose additional pleading requirements, Plaintiffs have satisfied them.

### B.   State Consumer Protection Statutes Apply to Anticompetitive Conduct and Are Not Barred by *Illinois Brick*

Defendants argue that Plaintiffs cannot bring *consumer protection* claims in Alaska,

Florida, Missouri, Montana, New Jersey and South Carolina because those states, according to

Defendants, follow *Illinois Brick* and prohibit indirect purchasers *antitrust* claims.  But *Illinois*

*Brick* does not nullify (or even address) state consumer protection claims.[61]  Defendants also

argue that the consumer protection laws of Arkansas, District of Columbia, Florida, Georgia,

New Mexico, Rhode Island and West Virginia do not apply to anticompetitive conduct. But these

---

[58] *See Solodyn*, 2015 WL 5458570, at *15 (end-payers sufficiently state claims under state statutes where claims "incorporate by reference the entire complaint, which contains many allegations of unfair competition and anticompetitive injury").

[59] *See In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 378-79 (E.D.N.Y. 2010) (at the pleading stage, sufficient to "outline[] only the broad contours of the state law causes of action" and "draw[] the connection between the statutes and the defendant's offending conduct"). In *Aggrenox*, 94 F. Supp. 3d at 255, the plaintiffs merely asserted unfair competition and cited the statute "with no elaboration."

[60] Defendants' cases are inapt.  *Aggrenox*, 2016 WL 4204478, at *6-7 and *Wellbutrin XL*, 260 F.R.D. at 162 address the Illinois consumer protection statute, but Plaintiffs have not asserted claims under that statute.  *Formula One Licensing v. Purple Interactive*, No. COO-2222, 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001) merely holds that where antitrust claims are deficient, consumer protection claims based on the same allegations must also be dismissed.

[61] *California v. ARC Am. Corp.*, 490 U.S. at 105.  *See In re Packaged Seafood Antitrust Litig.*, 242 F. Supp. 3d 1033, 1080 (S.D. Cal. 2017) ("*Packaged Seafood*") ("[J]ust because the same course of conduct gives rise to recovery under two distinct statutory provisions does not mean that a bar to recovery under one necessarily applies with equal force to the other.").

states model their consumer protection statutes on the Federal Trade Commission ("FTC") Act, which encompasses claims based on antitrust violations.[62]  All of these states permit indirect purchasers to bring consumer protection claims based on anticompetitive conduct.

**Alaska** (Defs.' EPP Br. at 18-19): Alaska's consumer protection statute prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" and must be interpreted with "due consideration and great weight" given to the federal FTC Act and the decisions interpreting it.  Alaska Stat. §§ 45.50.471(a), 45.50.545.  The FTC Act encompasses anticompetitive conduct, and Alaska's statute must likewise be interpreted to permit claims based on anticompetitive conduct.[63]

**Arkansas** (Defs.' EPP Br. at 21): The Arkansas Deceptive Trade Practices Act ("ADTPA") has repeatedly been interpreted to encompass claims based on price fixing and other anticompetitive conduct under its language prohibiting "unconscionable" conduct.[64]  This is

---

[62] *See FTC v. Cement Inst.*, 333 U.S. 683, 694 (1948) ("[A]ll conduct violative of the Sherman Act may likewise come within the unfair trade practice prohibitions of the Trade Commission Act."); *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454 (1986) ("unfairness" in the FTC Act encompasses "practices that violate the Sherman Act and the other antitrust laws").

[63] *See also Matanuska Maid, Inc.*, 620 P.2d 182, 185 (1980) (same conduct can violate the Alaska Antitrust *and* Consumer Protection statutes). Defendants (citing *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015) ("*Lidoderm*") and *D-RAM I*, 516 F. Supp. 2d at 1108) identify a 2003 amendment to the Alaska *antitrust* act, which provides that only the attorney general may sue on behalf of indirect purchasers.  Alaska Stat. Ann. § 45.50.577(i). This in no way impacts indirect purchaser claims under the *consumer protection* statute. The antitrust amendment expressly applies only to §§ 45.50.562-570 (the antitrust act) not the consumer protection statute (§§ 45.50.470-561), which is outside the range identified in the amendment.

[64] *Packaged Seafood*, 242 F. Supp. 3d at 1072; *Liquid Aluminum*, 2017 WL 3131977, at *25; *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 178-79 (D. Me. 2004) ("*New Motor Vehicles*"); *Sheet Metal Workers*, 737 F. Supp. 2d at 404; *Chocolate I*, 602 F. Supp. 2d at 583; *Lithium Ion Batteries*, 2014 WL 4955377, at *23; *Auto Parts III*, 50 F. Supp. 3d at 891.

FILED WITH REDACTIONS – PUBLIC VERSION

consistent with the directive of Arkansas courts to interpret the statute liberally. *See State ex rel. Bryant v. R&A Inv. Co.*, 336 Ark. 289, 295 (1999) (requiring liberal construction of ADTPA).[65]

**District of Columbia** (Defs.' EPP Clobetasol Br. at 26 & n.15): The Consumer Protection Procedures Act ("CPPA") is a comprehensive statute intended to remedy "all improper trade practices." D.C. Code § 28-3901(b)(1). "Trade practices that violate other laws…also fall within the purview of the CPPA." *District Cablevision Ltd. v. Bassin*, 828 A.2d 714, 722-23 (D.D.C. 2003). Accordingly, Courts have repeatedly interpreted the statute to encompass violations of antitrust laws.[66]

**Florida** (Defs.' EPP Clobetasol Br. at 25 n.13 & 26 n.15):  The Deceptive and Unfair Trade Practices Act ("DTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices," Fla. Stat. §501.204(1), and contains an FTC Act harmonization provision, requiring that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts" relating to

---

[65] *In re Static Random Access Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 131002, at *51 (N.D. Cal. Dec. 8, 2010), *In re Graphic Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029 (N.D. Cal. 2007) ("GPU I") and *In re Graphic Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1100-01 (N.D. Cal. 2007) ("GPU II"), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008) ("TFT-LCD I"), and *Lidoderm*, 103 F. Supp. 3d at 1166-67, cited by Defendants, are in the minority and inconsistent with the numerous authorities cited above, including the Arkansas Supreme Court's broad interpretation of the statute in *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 (Ark. 2006) (definition of unconscionable includes conduct that violates public policy or statute).

[66] *See, e.g.*, *Packaged Seafood*, 242 F. Supp. 3d at 1073 (violations of federal antitrust law state a claim under CCPA); *TFT-LCD I*, 586 F. Supp. 2d at 1125-26 (price-fixing claims actionable under CPPA); *New Motor Vehicles*, 350 F. Supp. 2d at 182-83; *Eggs*, 851 F. Supp. 2d at 898; *Chocolate I*, 602 F. Supp. 2d at 583. *GPU I*, 527 F. Supp. 2d at 1030-31, cited by Defendants, failed to address *District Cablevision* or the statutory language that broadens its scope to "all unfair trade practices." D.C. Code § 28-3901(b)(1).

FILED WITH REDACTIONS – PUBLIC VERSION

the FTC Act. *Id.* § 501.204(2). Indirect purchasers may bring claims based on anticompetitive conduct.[67]

**Georgia** (Defs.' EPP Br. at 21):  The Fair Business Practices Act ("FBPA") prohibits "[u]nfair or deceptive acts or practices," Ga. Code Ann. § 10-1-393(a), and mandates that the law "be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts" to the FTC Act. *Id.* § 10-1-391(b).[68]

**Missouri** (Defs.' EPP Br. at 19):  Missouri's Merchandising Practices Act ("MMPA") prohibits any "unfair practice" in connection with sales of merchandise, Mo. Rev. Stat. § 407.020(1), which includes acts that "offend any public policy as it has been established by," *inter alia*, the FTC. *See Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001). This includes antitrust violations. Indirect purchasers may recover under the MMPA, even if the alleged misconduct also gives rise to an antitrust claim.[69]

---

[67] *See, e.g.*, *Broiler Chicken*, 2017 WL 5574376, at *31-32 (discussing cases and permitting indirect purchaser price-fixing claim to proceed under FDTPA); *Liquid Aluminum*, 2017 WL 3131977, at *23; *Eggs*, 851 F. Supp. 2d at 900 (antitrust violations also violate Florida DTPA); *Solodyn*, 2015 WL 5458570, at *16 (indirect purchasers can bring claims under Florida DTPA for anticompetitive conduct); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 568-69 (E.D. La. 2013) ("*Pool Prods.*") (same); Defendants (and *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2015 WL 3988488, at *19 (N.D. Ill. June 29, 2015) ("*Dairy Farmers*")) cite *Mack v. Bristol-Meyers Squibb Co.*, 673 So.2d 100 (Fla. Ct. App. 1996), for the proposition that Plaintiffs may not bring antitrust claims, but *Mack* expressly holds the opposite.  673 So.2d at 109 (reversing dismissal because the "Florida DTPA clearly expresses the legislative policy to authorize consumers (that is, indirect purchasers) to bring actions under the Florida DTPA for price-fixing conduct").

[68] *See 1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457, 459 (Ga. Ct. App. 2007) (violation of FTC Act constitutes a violation of FBPA).  Defendants cite *HLD Enters., Inc. v. Michelin N. Am., Inc.*, No. 1:03-cv-2558T, 2004 WL 2095739, at *4 (N.D. Ga. June 29, 2004), which did not address the FTC harmonization provision or the language prohibiting "unfair" practices.

[69] *See Broiler Chicken*, 2017 WL 5574376, at *32; *Pool Prods.*, 946 F. Supp. 2d at 571 ("[T]he Missouri legislature has expressed no intent to incorporate federal antitrust standing limits into the MMPA and the Missouri Supreme Court has expressly allowed suit by indirect purchasers under the MMPA."); *Packaged Seafood*, 242 F. Supp. 3d at 1079 ("This Court joins

35

**Montana** (Defs.' EPP Br. at 19):  Montana's Unfair Trade Practices and Consumer Protection Act ("MUTPA") prohibits "unfair methods of competition" and "unfair or deceptive acts or practices," Mont. Code Ann. § 30-14-103,, and is interpreted in accord with the FTC Act. *Id.* § 30-14-104(1). Indirect purchasers have standing to bring claims under this provision.[70]

**New Jersey:**  Plaintiffs withdraw their New Jersey Consumer Protection Act claim.

**New Mexico** (Defs.' EPP Br. at 21):  The Unfair Trade Practices Act prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices" and contains a federal harmonization provision requiring that "courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts."  N.M. Stat. Ann. §§ 57-12-3, 57-12-4. Courts regularly permit claims based on anticompetitive conduct to proceed under the New Mexico statute where the plaintiff alleges (as here) "gross" or "significant" price increases resulting from the misconduct.[71]

---

the majority of our sister courts and concludes that *Illinois Brick* does not bar indirect-purchaser claims under the MMPA"). *See also Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) (MMPA "contemplates that other parties, besides the direct purchaser or contracting party… are included among those eligible to receive restitution."). Defendants cite *New Motor Vehicles*, 350 F. Supp. 2d at 192, which was decided before the Missouri Supreme Court clarified in *Gibbons* that indirect purchasers have standing under the MMPA.  *Suboxone*, 64 F. Supp. 3d at 701 is inconsistent with the majority of courts to consider the issue since *Gibbons*. *See Packaged Seafood*, 242 F. Supp. 3d at 1079-80.

[70] *See Broiler Chicken*, 2017 WL 5574376, at *32; *D-RAM I*, 516 F. Supp. 2d at 1112; *New Motor Vehicles*, 350 F. Supp. 2d at 192-93; *Auto Parts III*, 50 F. Supp. 3d at 893. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 661 n.4 (E.D. Mich. 2011), cited by Defendants, dismissed the Montana claims on other grounds. *In re Static Random Access Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 131002, at *38, 49 (N.D. Cal. Dec. 8, 2010) and *In re TFT-LCD Antitrust Litig.*, 2009 U.S. Dist. LEXIS 17792, at *20-22 (N.D. Cal. Mar. 3, 2009) addressed indirect purchaser standing under the *antitrust* (not the consumer protection) provisions of the MUTPA. *See D-RAM I*, 516 F. Supp. 2d at 1111-12 (distinguishing between MUTPA antitrust and consumer protection provisions).

[71] *See, e.g.*, *Chocolate I*, 602 F. Supp. 2d at 585-86 (allegations of artificial price increases as a result of price fixing sufficient to state a claim); *Filters*, 2009 WL 3754041, at *9 (allegations of supracompetitive prices as a result of price fixing sufficient); *Auto Parts II*, 29 F. Supp. 3d at 1009 (same); *DDAVP*, 903 F. Supp. 2d at 227 (same); *Packaged Seafood*, 242 F.

FILED WITH REDACTIONS – PUBLIC VERSION

**Rhode Island** (Defs.' EPP Br. at 22):  Rhode Island prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" and directs that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts" of the FTC Act.  6 R.I. Gen. Laws § 6-13.1-2,, 6-13.1-3. Conduct is "unfair" under the statute if it, *inter alia*, offends public policy or violates the statutes or common law, including the antitrust laws.[72]

**South Carolina** (Defs.' EPP Br. at 20):  The statute prohibits "[u]nfair methods of competition" and must be interpreted in accordance with the FTC Act. S.C. Code Ann. § 39-5-20. Indirect purchasers may bring claims based on anticompetitive conduct under the statute.[73]

**West Virginia** (Defs.' EPP Br. at 22):  The Consumer Credit and Protection Act prohibits "[u]nfair methods of competition" and requires that "courts be guided by the policies" of the FTC and interpretations of the FTC Act.  W. Va. Code §§ 46A-6-104, 46A-6-101(1).[74] Allegations of anticompetitive conduct state a claim under the statute.[75]

---

Supp. 3d at 1082 (same); *New Motor Vehicles*, 350 F. Supp. 2d at 195-96 (anticompetitive conspiracy causing higher prices actionable under New Mexico statute).

[72] *See Packaged Seafood*, 242 F. Supp. 3d at 1084 (citing *Ames v. Oceanside Welding & Towing Inc.*, 767 A.2d 677, 681 (R.I. 2001)); *Liquid Aluminum*, 2017 WL 3131977, at *28-29 (Sherman Act violations are statutory violations that give rise to a claim under the Rhode Island consumer protection statute); *Niaspan*, 42 F. Supp. 3d at 762; *TFT-LCD I*, 586 F. Supp. 2d at 1129; *Filters*, 2010 WL 1416259, at *2; *Chocolate I*, 602 F. Supp. 2d at 586; *D-RAM II*, 536 F. Supp. 2d at 1144-45. The cases cited by Defendants pre-date or overlook *Ames*.

[73] *See Broiler Chicken*, 2017 WL 5574376, at *33; *In re Packaged Seafood Antitrust Litig.*, No. 15-MD-2670, 2017 WL 4271894, at *6, 8 (S.D. Cal. Sept. 26, 2017) (holding that only South Carolina's antitrust statute follows *Illinois Brick*, "unlike with Plaintiffs' claims under the distinct statutory section containing South Carolina's Unfair Trade Practices Act").

[74] *D-RAM I*, 516 F. Supp. 2d at 1119 was decided before the legislature added FTC harmonization language in 2015.  *See Packaged Seafood*, 242 F. Supp. 3d at 1087.

[75] *See Packaged Seafood*, 242 F. Supp. 3d at 1087-88 (permitting price-fixing claims under West Virginia CCPA); *FTC v. Mylan Labs. Inc.*, 99 F. Supp. 2d 1, 10 (D.D.C. 1999) (same); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 237 (D. Mass. 2006) (certifying class asserting claims in price-fixing case under West Virginia statute).

FILED WITH REDACTIONS – PUBLIC VERSION

### C.  Plaintiffs' Claims Are Not "Remote"[76]

There is nothing "remote" or unforeseeable about Plaintiffs, who are the intended purchasers and end-users of Defendants' products. Defendants' "remoteness" argument should be rejected for the same reasons as Defendants' *Illinois Brick* and proximate causation arguments.[77] Defendants' state-specific arguments for Arkansas,[78] California,[79] Florida,[80] and North Carolina[81] are unavailing.

### D.  Plaintiffs Have Alleged In-State Effects of Defendants' Conduct[82]

Plaintiffs allege that Defendants' anticompetitive conduct had substantial effects and that *within each state* competition was suppressed, prices were elevated, and class members made

---

[76] *See* Defs.' EPP Clobetasol Br. at 27-28.

[77] Defendants' principal case, *Dairy Farmers*, 2015 WL 3988488, at *17 applied *AGC*, which, as discussed above does not bar claims here. *See also* Appendix A.

[78] Arkansas permits claims under the Deceptive Trade Practices Act ("ADTPA") by "[a] person who suffers an actual financial loss" so long as the loss is proximately caused by a violation of the statute.  Ark. Code Ann. § 4-88-113(f).  *See New Motor Vehicles*, 350 F. Supp. 2d at 178-79 ("I find no support in the ADTPA or Arkansas caselaw for a ban on indirect purchaser suits."); *D-RAM I*, 516 F. Supp. 2d at 1109.

[79] The California Supreme Court has expressly held that indirect purchasers have standing to sue for overcharges under California's competition law.  *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1087 (Cal. 2010).  Defendants' cases do not address causation, but hold that infirm antitrust claims cannot form the basis of a consumer protection claim.  *See Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374-75 (Cal. Ct. App. 2001) (considering "unfair" conduct, not causation); *Formula One Licensing*, 2001 WL 34792530, at *4 (dismissing for failure to plead with particularity or identify relevant market); *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 209 P.3d 937, 941 (Cal. 2009) (dismissed not for remoteness but because plaintiffs were uninjured assignees).

[80] Indirect purchasers may bring claims based on anticompetitive conduct under Florida's DTPA. *See Solodyn*, 2015 WL 5458570, at *16; *Mack*, 673 So.2d at 110 (indirect purchasers may bring actions under DTPA for price-fixing conduct). The case cited by Defendants, *2P Commercial Agency v. SRT USA Inc.*, 2013 WL 246650, at *4-5 (M.D. Fla. Jan. 23, 2013), stands for the unremarkable proposition that causation is an element of a claim under the statute.

[81] Indirect purchasers have standing under North Carolina's consumer protection statute. *See TFT-LCD I*, 586 F. Supp. 2d at 1123-24; *D-RAM II*, 536 F. Supp. 2d at 1142 (declining to apply *AGC* to North Carolina claims).

[82] *See* Defs.' EPP Br. at 29.

purchases at supracompetitive prices.  CCAC ¶¶ 229-58.  These allegations satisfy the

"intrastate" pleading requirements under the laws of Delaware,[83] District of Columbia,[84]

Florida,[85] Massachusetts,[86] New Hampshire,[87] New York,[88] North Carolina[89] and Vermont.[90]

*See also* Appendix C (cases on intra-state effects under consumer protection laws).

---

[83] *See* Del. Code Ann. tit. 6, § 2512 (statute protects consumers from unfair or deceptive practices "in the conduct of any trade or commerce in part or wholly within this State.").

[84] Courts regularly reject arguments that in-state conduct is required under D.C.'s antitrust statute and the Consumer Protection statute should be similarly interpreted. *See Williams v. Central Money Co.*, 974 F. Supp. 22, 27 (D.D.C. 1997) ("The District of Columbia's substantial interest in protecting its citizens… is furthered by applying the CPPA to business transactions…that are formally consummated outside D.C. but that have a substantial impact on consumers who reside and property that is located in the District."). Defendants cite no authority in support of their argument that the D.C. consumer protection claim should be dismissed.

[85] *See Flonase*, 692 F. Supp. 2d at 538 (intrastate requirements satisfied where "Plaintiffs allege some injury in the state of Florida"); *Sheet Metal Workers*, 737 F. Supp. 2d at 409 (permitting indirect purchaser claims under DTPA "based on reimbursement for purchases of over-priced drugs, even when the alleged injuries did not take place entirely within Florida"); *Wellbutrin XL*, 260 F.R.D. at 162 (reimbursement of purchases of drug in Florida sufficient).

[86] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 194 (1st Cir. 2009) (conduct that "caused financial injury to payors in Massachusetts" actionable under Massachusetts statute); *Liquid Aluminum*, 2017 WL 3131977, at *24-25, n.25 (allegations of interstate price-fixing conspiracy with in-state impact satisfy intrastate nexus requirements).

[87] *See Niaspan*, 42 F. Supp. 3d at 760-61 (paying overcharges in New Hampshire sufficient to state a claim); *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 235 (M.D. Pa. 2010) (same); *DDAVP*, 903 F. Supp. 2d at 231 (same); *New Motor Vehicles*, 350 F. Supp. 2d at 193 (same); *Harbour Capital Corp. v. Allied Capital Corp.*, No. 08-cv-506, 2009 WL 2185449, at *8 (D.N.H. July 22, 2009) ("[T]he most natural way to read the provision is to construe it to cover a defendant's extra-territorial acts if those acts affect travel or commerce within the state."); *Liquid Aluminum*, 2017 WL 3131977, at *24-25, n.25.

[88] *See Suboxone*, 64 F. Supp. 3d at 702 (overcharges in New York sufficient to establish nexus with intrastate commerce); *Auto Parts III*, 50 F. Supp. 3d at 893 (same); *Liquid Aluminum*, 2017 WL 3131977, at *24-25, n.25.

[89] *See Flonase*, 692 F. Supp. 2d at 537 (allegations that defendant sold product in state at artificially inflated prices sufficient to state a claim); *Auto Parts I*, 2013 WL 2456612, at *21 (same); *DDAVP*, 903 F. Supp. 2d at 231 (same); *Sheet Metal Workers*, 737 F. Supp. 2d at 420 ("Plaintiffs have alleged a substantial effect in North Carolina in pleading that they and members of their plans paid more for [product] in North Carolina as a result of" defendants' anticompetitive conduct); *Liquid Aluminum*, 2017 WL 3131977, at *24-25, n.25.

[90] *Liquid Aluminum*, 2017 WL 3131977, at *24-25, n.25.  Defendants cite no authority in support of their argument that the Vermont consumer protection claim should be dismissed.

FILED WITH REDACTIONS – PUBLIC VERSION

**E.**    **State Class Action Bars Do Not Apply in Federal Court**

Class action bars in state consumer protection statutes do not apply in federal court for the same reasons (discussed above) that similar provisions in state antitrust statutes do not apply: federal procedural rules, including Rule 23, control over conflicting state provisions, such as those that restrict or condition class actions, even under Defendants' reading of *Shady Grove*, 559 U.S. at 399, 408.

**Alaska** (Defs.' EPP Clobetasol Br. at 26 & n.14):  Alaska's consumer protection law does not restrict or bar class actions in any way.  Defendants do not cite any language from the consumer protection statute in support of their argument, but instead cite to the Alaska antitrust statute, § 45.50.577(i), which is expressly limited to the antitrust statute and does not apply to the consumer protection statute, which is separately codified at §§ 45.50.471-561.  Moreover, the Alaska Supreme Court has recognized that the same anticompetitive conduct can constitute violations of both the antitrust and consumer protection statutes.  *See Matanuska Maid, Inc. v. Alaska*, 620 P.2d at 185 (1980).[91]

**Georgia** (Defs.' EPP Br. at 20):  Application of Rule 23 in lieu of Georgia's class action bar does not "abridge, enlarge or modify any substantive right."  *In re Volkswagen Timing Chain Product Liability Litig.*, No. 16-2765, 2017 WL 1902160, at *24 (D.N.J. May 8, 2017) ("*Volkswagen*").  Georgia's class action bar affects only "how the claims are processed" and must yield to Rule 23.[92]

---

[91] *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 415-16 (D. Del. 2007) ("*Intel Microprocessor*") was decided before *Shady Grove*.

[92] *In re Hydroxycut Marketing and Sales Practices Litig.*, 299 F.R.D. 648, 652-54 (S.D. Cal. 2014) ("*Hydroxycut*").  *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1163-65 (D. Minn. 2014) ("*Target Data Breach*") did not specifically examine the Georgia statutory language or effect.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) ("*AWP*") was decided before *Shady Grove*.

FILED WITH REDACTIONS – PUBLIC VERSION

**Montana** (Defs.' EPP Br. at 20):  Montana's class action bar "does not prevent individuals who would otherwise be members of the class from bringing their own separate suits or joining in a preexisting lawsuit." *Hydroxycut*, 299 F.R.D. at 654.  *See* Mont. Code Ann. § 30-14-133.  Thus, "[t]he substantive rights of these individuals are not affected" by whether or not the case proceeds as a class action. *Hydroxycut*, 299 F.R.D. at 654.[93]

**South Carolina** (Defs.' EPP Br. at 20):  The South Carolina Unfair Trade Practices Act ("SCUTPA") grants a right to seek damages to "[a]ny person who suffers any ascertainable loss of money or property."  S.C. Code Ann. § 39-5-140(a).  There is "no question" that plaintiffs have a substantive right to sue for damages, thus the class action bar is "a procedural rather than substantive rule." *Packaged Seafood*, 242 F. Supp. 3d at 1086.[94]

**Utah** (Defs.' EPP Br. at 20):  The consumer protection statute does not prohibit class actions; rather, it provides that class members may only seek actual, not statutory, damages. *Compare* Utah Code Ann. § 13-11-19(4)(a) (permitting class actions for "actual damages"

---

[93] *See also Auto Parts*, 50 F. Supp. at 862 ("[T]he Montana statute addresses class actions only in the context of the procedures available to enforce the right in state court" and "does not alter the substantive scope of the right to relief."); *Wittman v. CB1*, No. CV-15-05, 2016 WL 3093427, at *6 (D. Mon. June 1, 2016) (same). *Target Data Breach*, 66 F. Supp. 3d at 1163-65 did not examine the Montana statutory language. *AWP*, 230 F.R.D. at 84 (D. Mass. 2005), and *D-RAM I*, 516 F. Supp. 2d at 1104, were decided before *Shady Grove*.

[94] *See Hydroxycut*, 299 F.R.D. at 652-54 (South Carolina's class action bar yields to Rule 23 under *Shady Grove*); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180, 2015 WL 475535, at *21 (N.D. Cal. Aug. 11, 2015) (same); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) (same); *Volkswagen*, 2017 WL 1902160, at *24 (same); *Liquid Aluminum*, 2017 WL 313 1977, at *25 (same). *TD Bank N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) relied on the structure of the statute, thus elevating form over substance. *See Lisk*, 792 F.3d at 1336. *Target Data Breach*, 66 F. Supp. 3d at 1163-65 did not examine the relevant statutory language or effect.

FILED WITH REDACTIONS – PUBLIC VERSION

caused by certain statutory violations) *with* § 13-11-19(2) (consumers may recover "but not in a class action" actual or statutory damages "whichever is greater").[95]

### F.   Georgia's Consumer Protection Statute Authorizes Damages Claims[96]

Defendants argue that Georgia's consumer protection statute authorizes "only equitable relief."  This is incorrect.  Defendants ignore the relevant statutory language.  *See* Ga. Code Ann. § 10-1-393(a), 399(a); *Johnson v. GAPVT Motors*, 292 Ga. App. 79, 84 (Ga. Ct. App. 2008) (section 10-1-393(a) authorizes private actions for treble damages).

### G.   Plaintiffs Adequately Allege Deceptive and Unconscionable Conduct Under Various States' Consumer Protection Statutes[97]

Defendants argue that Plaintiffs' claims under the consumer protection statutes of various states fail because Plaintiffs did not sufficiently allege fraud or deception.  Defendants' argument ignores that state consumer protection statutes typically grant broad remedies based upon various types of unlawful conduct, including, *inter alia*, unfair, unconscionable *or* deceptive conduct, in the disjunctive.  Thus, even if the Court finds that Plaintiffs did not adequately allege a violation based upon one prong of a statute (*e.g.*, deceptive conduct), it can still find that Plaintiffs stated a claim based upon another prong (*e.g.*, unfair or unconscionable conduct).  To the extent that any statutes do require Plaintiffs to plead deceptive conduct, Plaintiffs have done so; the Complaint alleges an illegal price-fixing conspiracy among Defendants, hatched in secret and maintained

---

[95] *See In re Solodyn Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *20 (D. Mass. Oct. 16, 2017) (allowing class members who were injured in Utah to proceed with class action claims for damages caused by anticompetitive "pay for delay" agreement); *Intel Microprocessor*, 496 F. Supp. 2d at 418 (same).  *Target Data Breach*, 66 F. Supp. 3d at 1165 is inapposite because plaintiffs "concede[d]"the issue and abandoned the Utah claim.

[96] *See* Defs.' EPP Br. at 21 n.7.

[97] *See* Defs.' EPP Br. at 23-28.

FILED WITH REDACTIONS – PUBLIC VERSION

through deception, during which Defendants misleadingly conveyed to Plaintiffs and the market that pricing for Defendants' products was competitive.[98]

---

[98] Defendants' state specific arguments concerning "deceptive" conduct are without merit. **Colorado:** The Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105(1), encompasses both unfair *and* deceptive trade practices. *See Liquid Aluminum*, 2017 WL 3131977, at *26 (allowing price-fixing claim under CCPA); *DDAVP*, 903 F. Supp. 2d at 224 (allegations of defendants' misrepresentations to the marketplace about a drug, which caused plaintiffs to pay supracompetitive prices, stated violation of CCPA). **Delaware:** The Delaware Consumer Fraud Act ("DCFA") declares unlawful "any deception, fraud, false pretense . . . misrepresentation, or the concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission . . . whether or not any person has in fact been misled, deceived or damaged thereby[.]" Unlike the plaintiffs in *New Motor Vehicles*, 350 F. Supp. 2d at 181-82, Plaintiffs have alleged that Defendants engaged in deceptive conduct and made material omissions by concealing their price-fixing conspiracy. **Michigan:** The Michigan Consumer Protection Act ("MCPA") prohibits "[u]nfair, unconscionable *or* deceptive methods, acts or practices," Mich. Comp. Laws § 445.903 (emphasis added), and states that the statute should be construed consistently with the FTC Act. *Id.* § 445.911. *See Packaged Seafood*, 242 F. Supp. 3d at 1076 (price-fixing conspiracy sufficient to allege a fraud-based claim under the MCPA). **Minnesota:** "To sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon regardless of whether any person has, in fact, been misled, deceived, or damaged." *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 474 (Minn. Ct. App. 1999). The Minnesota consumer protection law is "remedial in nature and [is] to be liberally construed in favor of protecting consumers." *State by Humphrey v. Alpine Air Prod., Inc.*, 490 N.W.2d 888, 892 (Minn. Ct. App. 1992), *aff'd*, 500 N.W.2d 788 (Minn. 1993). **North Dakota:** The statute prohibits unconscionable acts or conduct that causes "substantial injury" and is "not out-weighed by countervailing benefits to consumers or to competition." N.D. Cent. Code Ann. § 51-15-02. The deception/fraud prong of the North Dakota statute does not require that plaintiffs actually be deceived or misled, as may be required for other fraud-based claims. *See Jorgenson v. Agway, Inc.*, 627 N.W.2d 391, 393 (N.D. 2001) (citing N.D. Cent. Code Ann. § 51-15-02). **South Dakota:** The South Dakota Deceptive Trade Practices Act ("SDDTPA") provides that it is unlawful to "use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or . . . conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged." S.D. Codified Laws § 37-24-6(1). *See DDAVP*, 903 F. Supp. 2d at 229 (upholding SDDTPA claim where plaintiffs were "adversely affected" by defendants fraud "when they relied on [defendants'] representations and paid supracompetitive prices for the drug."). **Virginia:** The Virginia Consumer Protection Act ("VCPA") prohibits the use of "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14). Anticompetitive conduct falls within the ambit of the VCPA. *See Synergistic Int'l, LLC v. Korman*, 402 F. Supp. 2d 651, 664 (E.D. Va. 2005), *aff'd in part, rev'd in part on other grounds*, 470 F.3d 162 (4th Cir. 2006).

FILED WITH REDACTIONS – PUBLIC VERSION

Courts overwhelmingly recognize that "unconscionable" conduct encompasses a broad swath of activities, including price-fixing conspiracies.  For example, the court in *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1157 (N.D. Cal. 2009) recognized that price-fixing conspiracies are unconscionable because they are one-sided and unfairly benefit defendants at the expense of plaintiffs and the public.  *See id.* (rejecting analysis of *GPU I*, 527 F. Supp. 2d 1011, the main case relied upon by Defendants).[99]  *See also* Appendix D (addressing deceptive and unconscionable conduct).

---

[99] Defendants' state specific arguments concerning "unconscionable" conduct are without merit.  **Arkansas:**  The ADTPA broadly covers "any trade practice which is unconscionable, which includes conduct violative of public policy or statute."  *Baptist Health*, 226 S.W.3d at 811.  *See Liquid Aluminum*, 2017 WL 3131977, at *25 ("the mere fact that 'price-fixing' is not enumerated in the [ADTPA] does not render such a claim non-actionable under" broad concept of unconscionable conduct); *Chocolate I*, 602 F. Supp. 2d at 582-83 (same); *New Motor Vehicles*, 350 F.Supp.2d at 178 (same).  **New Mexico:**  The New Mexico Unfair Trade Practices Act ("NMUTPA"), N.M. Stat. Ann. § 57-12-1, *et seq.* defines an "[u]nconscionable trade practice" as: "an act or practice . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. § 57-12-2.  Federal courts frequently uphold NMUTPA claims based on price fixing.  *See Liquid Aluminum*, 2017 WL 3131977, at *27; *In re Domestic Drywall Antitrust Litig.*, No. 15-cv-2437, 2016 WL 3769680, at *10 (E.D. Pa. Jul 13, 2016) ("*Drywall*"); *Auto Parts I*, 2013 WL 2456612, at *25; *Filters*, 2009 WL 3754041, *9; *Chocolate I*, 602 F. Supp. 2d at 585; *New Motor Vehicles*, 350 F. Supp. 2d at 195-96.  **New York:**  Section 349 of the New York General Business Law ("NY GBL") prohibits deceptive acts or practices that cause consumer injury or harm to the public interest.  N.Y. Gen. Bus. Law § 349.  The statute extends "far beyond the reach of common law fraud," and allegations of anticompetitive conduct are sufficient to state a claim where, as here, consumers are injured.  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (bid rigging conspiracy stated Section 349 claim); *DDAVP*, 903 F. Supp. 2d at 228 (anticompetitive conduct "imbued with a degree of subterfuge" is actionable); *Macquarie Grp. Ltd. v. Pac. Corporate Grp., LLC*, No. 08-CV-2113 IEG-WMC, 2009 WL 539928, at *9 (S.D. Cal. Mar. 2, 2009) (conspiracy to prevent market entry thereby allowing defendant to charge supra-competitive prices stated Section 349 claim); *Intel Microprocessor*, 496 F. Supp. 2d at 418.  Concealment of a price-fixing conspiracy does constitute deceptive conduct in violation of NY GBL Section 349.  *See Auto Parts*, 50 F. Supp. 3d at 859; *GPU I*, 527 F. Supp. 2d at 1030.  **Utah:**  The Utah Consumer Sales Practices Act ("UCSPA").  Utah Code § 13-11-1, *et. seq.* requires a plaintiff to plead unconscionable *or* deceptive conduct, not both. The statute "shall be construed liberally" and its purpose is "to make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act[.]"  *Id.* § 13-11-

### H.      Plaintiffs State a Claim under the Wisconsin Deceptive Trade Practices Act[100]

The Wisconsin Deceptive Trade Practices Act, ("WDTPA"), W.S.A. § 100.18, *et seq.*, prohibits "untrue, deceptive or misleading" statements and is interpreted broadly.[101]  Plaintiffs allege that Defendants affirmatively misrepresented that their prices were competitive and fair. These allegations state a violation of the WDTPA.  *See State v. Abbott Labs.*, 829 N.W.2d 753, 761-62 (Wis. Ct. App. 2013) (drug manufacturers violated WDTPA by reporting artificially inflated drug prices, which caused Medicaid to overpay for drugs). The lone case cited by Defendants is not to the contrary.[102]  Defendants' argument—citing no case or statutory provision—that the WDTPA requires commercial activity with Defendants is without merit.[103]

### I.      Plaintiffs Are Not Required to Allege Reliance on a Misrepresentation under the Consumer Protection Laws of North Carolina and Wisconsin[104]

**North Carolina:**  The plain language of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") prohibits "[u]nfair methods of competition . . . and unfair or deceptive acts or practices," N.C. Gen. Stat. § 75-1.1, and is based on Section 5 of the FTC Act.

---

2.  Thus, traditional elements of a fraud-based claim like deception and reliance do not apply. *See Packaged Seafood*, 242 F. Supp. 3d at 1086-87 (upholding UCSPA claims based upon antitrust conspiracy); *Intel Microprocessor*, 496 F. Supp. 2d at 418 (same); *New Motor Vehicles*, 350 F. Supp. 2d at 204-05 (same).

[100] *See* Defs.' EPP Br. at 27-28.

[101] *See*, *e.g.*, *Winkelman v. Kraft Foods, Inc.*, 693 N.W.2d 756, 762-63 (Wis. Ct. App. 2005); *Tim Torres Enterprises, Inc. v. Linscott*, 416 N.W.2d 670, 676 (Wis. Ct. App. 1987).

[102] In *Zeller v. Northrup King Co.*, 370 N.W.2d 809, 813-14 (Wis. Ct. App. 1985), the alleged misrepresentations were made *after* the plaintiffs purchased the product at issue and were intended to discourage plaintiffs from purchasing a different product.

[103] *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, No. 07-c-0765, 2011 WL 13116667 (E.D. Wis. Nov. 15, 2011) held that a standards-setting organization did not violate the WDTPA by publishing allegedly false and misleading information because the organization did not actually sell any products.

[104] *See* Defs.' EPP Br. at 28-29.

FILED WITH REDACTIONS – PUBLIC VERSION

"Price-fixing is the type of commercial conduct the [NCUDTPA] was designed to target." *Auto Parts I*, 2013 WL 2456612, at \*26.[105]

    **Wisconsin:**  Defendants argue that EPPs could not have relied on Defendants' misrepresentations because EPPs would have purchased the drugs no matter the cost.  This is simply untrue.  And, had Defendants been honest about their anticompetitive conduct, EPPs would have demanded a lower price; they did not do so only because they relied on Defendants' misrepresentations.  *See Abbott Labs.*, 829 N.W.2d at 761-62 (manufacturers' misrepresentations about the prices of their drugs can constitute a violation of the WDTPA where the State Medicaid fund "paid more than it intended to").[106]

### J.    <u>Plaintiffs Satisfy Statutory Definitions of "Consumers"</u>[107]

    Defendants contend that various consumer protection statutes permit suits by consumers that are natural persons, but not TPPs.  <u>*First*</u>, the EPP class includes both TPPs and natural persons.  <u>*Second*</u>, TPPs participate in consumer transactions by paying some or all of the prices charged to individual consumers, and, as a result, pay a portion of any overcharges.  These purchases are made for the personal purposes of the patient.  TPPs do not purchase drugs for resale, distribute products or act as intermediaries in the distribution chain.  Moreover, state

---

[105] *See ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 48 (4th Cir. 1983) ("conduct violative of the Sherman Act is proof sufficient to establish a violation of the [NCUDTPA]."); *Liquid Aluminum*, 2017 WL 3131977 (upholding NCUDTPA claim); *In re Checking Account Overdraft Litig.*, No. 1:09-md-02036, 2016 WL 5848729, at \*4 (S.D. Fla. Feb. 8, 2016) ("either unfairness or deception can bring conduct within the purview of the statute; an act need not be both unfair and deceptive") (citation omitted). *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E. 2d 220, 226 (N.C. 2013) is not to the contrary.  *See Checking Account Overdraft*, 2016 WL 5848729, at \*4 (distinguishing *Bumpers*).  *Jones v. ConAgra Foods, Inc.*, No. C-12-01633, 2014 WL 2702726, at \*4 (N.D. Cal. June 13, 2014) did not concern the NCUDTPA and is inapposite.

[106] *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F.Supp.2d 659, 663 (W.D. Wis. 2009) merely notes that a court may consider reliance in connection with causation.

[107] *See* Defs.' EPP Br. at 30-31.

FILED WITH REDACTIONS – PUBLIC VERSION

statutes define "person" to include entities, like TPPs. In sum, each state authorizes claims by

TPPs under these circumstances.[108]

_____

[108] Defendants' state-specific arguments concerning "consumers" are without merit. **California**:  The statute permits suits by any "person," Cal. Bus. & Prof. Code § 17204, which includes entities. *Id.* § 17201. Defendants cite no authority that limits claims to natural persons. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (plaintiff need only show "some form of economic injury" to have standing).  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 898 (C.D. Cal. 2012) dismissed because the plaintiff was not injured, not because plaintiff was an entity. **DC:**  The CPPA defines "consumer" as any "person" (defined to include entities) who purchases "consumer goods or services," so long as the purchase is not "for purposes of resale."  D.C. Code § 28-3901(a).  *See Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. App. 1989) ("If…the purchaser is not engaged in the regular business of purchasing…and reselling it, then the transaction will usually fall within the Act."); *Liquid Aluminum*, 2017 WL 3131977, at *26 (claim upheld under CPPA); *Mann v. Bahi*, 251 F. Supp. 3d 112, 120 (D.D.C. 2017) (CPPA permits claims by those like TPPs who "purchase" and by consumers that "receive" products). **Hawaii:**  Hawaii Rev. Stat. § 480-2(e) provides that "[a]ny person may bring an action."  *See Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 307-312 (Haw. 2010) (use of broad "any person" language demonstrates that actions not limited to individual consumers).  The definition of "consumer" in Haw. Rev. Stat. §480-1 appears only in § 480-2(d) and is limited to actions based on "deceptive" claims. **Massachusetts**: *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 81-82 (D. Mass. 2007) (third party payers who reimbursed prescription costs could bring claims under Section 9 because they "were not motivated by the desire to make money" in the transactions); *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 194 (1st Cir. 2009) (allowing third-party payors to recover under section 11).  **Michigan**:  The statute's personal use limitation applies to the nature of the goods or services offered by the *defendant*, not to the identity of the purchaser, Mich. Comp. Laws § 445.902(g), and permits suits by "persons," which are defined to include entities.  *Id.* § 445.911(2); § 445.902(d).  *See FTC v. Mylan Labs*, 62 F. Supp. 2d 25, 48 (D.D.C. 1999); *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 779 F. Supp. 2d 671, 681 (E.D. Mich. 2011) (businesses are permitted to bring claims under the MCPA); *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 847-850 (E.D. Mich. 2003); *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 902 (W.D. Mich. 2001); *John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 970 (E.D. Mich. 1994). **Missouri**: The MMPA defines "person," to include entities, Mo. Rev. Stat. § 407.010(5), and the personal use limitation applies to the nature and intended use of the merchandise, not to the identity of the purchaser.  *See FTC v. Mylan Labs*, 62 F. Supp. 2d at 48. **Montana**: Montana permits claims by any "consumer," Mont. Code Ann. § 30-14-133(1), which are defined as a "person," *id.* § 34-14-102(1), which in turn are defined to include entities. *Id.* § 34-14-102(6). The statute is "not limited to those who engage directly in consumer transactions."  *New Motor Vehicles*, 350 F. Supp. 2d at 193.  *Lidoderm*, 103 F. Supp. 3d at 1165 held that the Montana statute excludes "persons who buy goods for resale," which TPPs do not.  **Nevada**:  *Drywall*, 2016 WL 3769680, at *8 (Nevada statute does not limit standing to consumers); *Del Webb Communities Inc. v. Partington*, 652 F.3d 1145, 1152 (9th Cir. 2011) (Nevada statute does not

### K.      Plaintiffs Are Not Required to Allege Direct Sales to Consumers[109]

Defendants argue that the consumer protection laws of Missouri and Vermont require direct sales between Defendants and Plaintiffs.  The Supreme Court of each state has expressly rejected this argument.  The Missouri Supreme Court has clarified that the MMPA's "plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement."  *Gibbons*, 216 S.W. 3d at 669 (holding that MMPA permits claims against wholesalers who are "upstream from the consumer sale").  The Vermont Consumer Fraud Act ("CFA") broadly authorizes relief against any "seller, solicitor *or other violator*" of the CFA.  Vt. Stat. Ann. tit. 9 § 2461(b) (emphasis added).  The Vermont Supreme Court has recognized that "other violator" is a "broad term" that encompasses defendants who do not meet the statutory definition of "sellers."  *See Elkins v. Microsoft Corp.*, 174 Vt. 328, 330-31 (2002).  There is thus "no requirement that the defendant sold goods or

---

limit standing to consumers and broadly permits any injured person to sue). **Rhode Island**: The statute permits suits by persons, which are defined to include entities. R.I. Gen. Laws § 6-13.1-1(3). *Rhode Island Laborers v. Philip Morris*, 99 F. Supp. 2d 174, 188 (D.R.I. 2000) involved claims by health and welfare funds against tobacco companies for increased costs of smokers' health care, not for purchases. *Sheet Metal Workers*, 737 F. Supp. 2d at 423, held that only individuals may sue, disregarding the broad definition of "person" in the statute. **Vermont**: The Consumer Protection Act defines consumer to include "a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business." Vt. Stat. Ann. tit. 9 § 2451a(a). This language was added to the statute to "signal[] the Legislature's intent to provide businesses with the same protections under the Act as individuals have historically received." *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 184 Vt. 355, 364-65 (2008). **West Virginia**: Statute authorizes "any person" to bring suit.  W. Va. Code Ann. § 46A-6-106(a). The definition of "consumer," *id.* § 46A-6-102(2), is not used in and is not applicable to the provision authorizing private actions. *D-RAM I*, 516 F. Supp. 2d at 1119 n.12 relied on the title of the provision authorizing private rights of action—*at that time*, "Actions by Consumers"—which is now titled "Private Causes of Action" after a 2015 Amendment intended to "clarify[] who may bring private cause of action." *See* 2015 W.V. SB 315.

[109] *See* Defs.' EPP Br. at 29-30.

services directly to the plaintiff." *Sawyer v. Robson*, 181 Vt. 216, 222-23 (2006).[110]

    **L.**    **Plaintiffs Are Not Required to Meet Heightened Pleading Requirements**[111]

The heightened pleading standards of Fed. R. Civ. P. 9(b) do not apply to Plaintiffs'

claims under Florida's (or any other jurisdiction's) consumer protection laws for the simple

reason that Plaintiffs are not required to allege fraud as an element of their claim. For example,

the FDUTPA prohibits both unfair *and* deceptive conduct, Fla. Stat. §501.204(1), and antitrust

violations are actionable under the unfairness prong.  Accordingly, "no allegations of fraudulent

conduct must be pled in order for Plaintiffs to sufficiently allege *under Rule 8* a FDUTPA claim

based upon an antitrust violation."  *Eggs*, 851 F. Supp. 2d at 900 (emphasis added).[112]

    **M.**    **Statutory Notice and/or Demand Requirements Do Not Apply Here**[113]

*First*, Plaintiffs sent notice and demand letters to Defendants, *see* Appendix H (Pessin

Decl.), so dismissal on that basis is unfounded.  *Second*, even were Plaintiffs' notices to

Defendants deemed inadequate or altogether absent, would be of no consequence because the

West Virginia and Massachusetts notice requirements are procedural in nature and thus not

applicable in federal court under *Shady Grove*. 559 U.S. at 407.  Pre-filing notice provisions (like

those at issue here) are designed to facilitate settlement and do not abridge or modify substantive

---

[110] *New Motor Vehicles*, 350 F. Supp. 2d at 206 (CFA "does not require that a defendant have directly engaged in trade with consumers").

[111] *See* Defs.' EPP Br. at 24-25.

[112] *See Broiler Chicken*, 2017 WL 5574376, at *31-33 (finding heightened pleading requirements of Rule 9(b) inapplicable and declining to dismiss indirect purchaser claims); *Liquid Aluminum*, 2017 WL 3131977, at *26 (same); *Auto Parts I*, 2013 WL 2456612, at *23 (same); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1263 (N.D. Fla. 2012) (same); *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007) (same); *Eli Lilly v. Tyco Integrated Security*, No. 13-80371-CIV-BLOOM/Valle, 2015 WL 11251732, at *4 (S.D. Fla. Feb. 10, 2015) (same).  Defendants' cases do not address the distinction between fraud and non-fraud claims and incorrectly assume that pleading standards applicable to fraud claims should apply to all FDUPTA claims.

[113] *See* Defs.' EPP Clobetasol Br. at 30-31.

FILED WITH REDACTIONS – PUBLIC VERSION

rights. *See Mace*, 109 F.3d at 346 (Wisconsin statutory notice provision does not grant a substantive right, particularly if the purpose of the provision is to encourage settlement). The West Virginia statute grants injured parties the right to sue for damages, then creates a pre-filing notice mechanism to encourage the parties to attempt to settle their dispute. *See* W. Va. Code Ann. § 46A-6-106(a), (c)-(d) (providing for notice and opportunity for defendant to offer to cure the violation). Similarly, the Massachusetts notice provision encourages settlement by means of a "written demand for relief" to be mailed to the defendant before the action is filed. *See* Mass. Gen. Law Ch. 93A § 9. These notice provisions do not "grant or deny a substantive right;" rather, they affect only "the period within which that right can be exercised" and the timing of settlement discussions. *Mace*, 109 F.3d at 346. Moreover, the Massachusetts statutory notice provisions are inapplicable here; for claims brought under section 9 of the statute, notice is only required if the defendant *both* keeps a place of business *and* keeps assets in the state. *Moronta v. Nationstar Mortgage, LLC*, 476 Mass. 1013, 1014 (2016).[114]

### N.   **Defendants Are "Suppliers" under Utah's Consumer Protection Statute**[115]

Utah's Consumer Sales Practices Act prohibits misconduct by suppliers, defined as "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, *whether or not he deals directly with the consumer*." Utah Code Ann. § 13-11-3(6) (emphasis added). Defendants misleadingly elide the last portion of this

---

[114] Notice is not required for claims brought under section 11 of the statute. *See* Mass. Gen. Law Ch. 93A § 11; *Crisp Human Capital Ltd. v. Authoria Inc.*, 613 F. Supp. 2d 136, 139 (D. Mass. 2009) ("[T]he demand requirement applies only to *persons*, not businesses, who seek a remedy for unfair and deceptive practices under [section 9]."). *Flonase*, 692 F. Supp. 2d at 539-40, *Suboxone*, 64 F. Supp. 3d at 700-701, *Sheet Metal Workers*, 737 F. Supp. 2d at 411 and *Rodi v Southern New England School of Law*, 389 F.3d 5, 20 (1st Cir. 2004) did not address the in-state place of business and assets requirements and did not apply *Shady Grove*. *Stanley v. Huntington Nat'l Bank*, No. 1:11cv54, 2012 WL 254135, at *6 (N.D. W. Va. Jan. 27, 2012) likewise did not apply *Shady Grove* to its analysis of the West Virginia statute.

[115] *See* Defs.' EPP Br. at 29-30.

definition, which makes clear that a seller can be liable under the statute even if it is not directly

involved in the sale to the consumer.  Thus, "[t]he situation in which deceptive Supplier A

charges innocent intermediate Supplier B an inflated price and B then passes that inflated price

on to Consumer C is easily foreseeable, and one from which the consumer should be protected."

*See Utah v. B&H Auto*, 701 F. Supp. 201, 204-5 (D. Utah 1988).

### O.    Plaintiffs Have Stated a Claim Under Nevada Law[116]

Nevada's Deceptive Practices Act provides that "[a]n action may be brought by *any*

*person* who is a victim of consumer fraud."  Nev. Rev. Stat. § 41.600(1) (emphasis added).[117]

The provision Defendants cite, Nev. Rev. Stat. § 598.0977, creates *additional* remedies for

elderly persons and persons with disabilities. It does not abrogate the right of action provided to

*all* injured persons by § 41.600.[118]

---

[116] *See* Defs.' EPP Br. at 31-32.

[117] "Consumer fraud" is defined to include practices specified in Nev. Rev. Stat.
§§ 598.0915-0925, *e.g.*, § 598.0923(3) (defining deceptive trade practice to include knowing
violations of "a state or federal statute or regulation relating to the sale or lease of goods or
services.") and § 598.0915 (13) (deceptive trade practices includes making false or misleading
statements concerning the price of goods or services). Plaintiffs may bring claims under these
provisions. *See Nev. Power Co. v. Eighth Jud. Dist. Ct. of Nev.*, 102 P.3d 578, 583 n.7 (Nev.
2004) (§ 41.600 authorizes a private right of action by any victim of consumer fraud); *accord S.
Serv. v. Excel Building Servs. Inc.*, 617 F. Supp. 2d 1097, 1099 (D. Nev. 2007) (§ 41.600
authorizes businesses to bring claims for deceptive trade practices).

[118] *See Packaged Seafood*, 242 F. Supp. 3d at 1080 (any person, not just elderly and
disabled persons, can bring claims under § 41.600); *DDAVP*, 903 F. Supp. 2d at 226-27
("[W]hile any victim of consumer fraud may bring a civil action, elderly and disabled persons
may recover more for each violation.").  *Chocolate*, 749 F. Supp. 2d at 234 and *Wellbutrin XL*,
260 F.R.D. at 163-64 did not consider § 41.600.  *Cast Iron Soil Pipe*, 2015 WL 5166014, at *31
held that § 41.600 only authorizes claims by "natural persons," but that is an error. *See, e.g.*, *Del
Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1152-53 (9th Cir. 2011) (corporation
entitled to sue under § 41.600); *S. Serv.*, 617 F. Supp. 2d at 1099 (business competitors can bring
claims under § 41.600).

FILED WITH REDACTIONS – PUBLIC VERSION

## VII.   PLAINTIFFS HAVE ADEQUATELY PLED UNJUST ENRICHMENT

Defendants contest the validity of certain unjust enrichment claims. EPPs respond to all such arguments below and in Appendices E and F.

### A.   *Illinois Brick* Does Not Preclude Plaintiffs' Unjust Enrichment Claims[119]

Defendants argue that *because* Plaintiffs cannot bring statutory antitrust claims in certain states, Plaintiffs *also* cannot bring claims for unjust enrichment under the common law of those states. But one does not follow from the other. Defendants (and some courts) have "confuse[d] Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." *Cardizem*, 105 F. Supp. 2d at 669-71 (allowing unjust enrichment claims).[120]

While decisions go both ways, the better reasoned decisions permit unjust enrichment claims in non-*Illinois Brick* repealer states. "No reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy." *In re G-fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008).  This Court should likewise "not [be] convinced by Defendants' argument that federal and

---

[119] *See* Defs.' EPP Br. at 34.

[120] Defendants suggest that Plaintiffs inadequately plead unjust enrichment as "undifferentiated state law." In fact, Plaintiffs separately allege the unjust enrichment claims of each jurisdiction. *See* CCAC ¶¶ 292-362. More broadly, Defendants' assertion that the unjust enrichment laws of the various jurisdictions is complex and inconsistent does not withstand scrutiny. Unjust enrichment claims are "control[led] in every case by equitable principles." *Stone v. White*, 301 U.S. 532, 534 (1937). "The common denominator is the shared principle that it is unjust for a defendant who is enriched at the expense of the plaintiff to accept and retain the ill-gotten benefit." *Eggs*, 851 F. Supp. 2d at 912. *See also* Daniel R. Karon, *Undoing the Otherwise Perfect Crime: Applying Unjust Enrichment to Consumer Price-Fixing Claims*, 108 W. Va. L. Rev. 395, 410 & n.79 (2005)  ("[S]ince all states' common laws grew from shared historical roots (including universally accepted fairness concerns), it isn't surprising that all states' unjust enrichment laws contain virtually identical elements.").

state antitrust laws lay waste to common-law claims of unjust enrichment." *In re Cardizem CD Antitrust Litig.*, MDL 1278, Order No. 70 at 28 (E.D. Mich. May 23, 2003).[121]  *See also* Appendix E (responding to Defendants' appendices addressing *Illinois Brick* and unjust enrichment).

Moreover, *Illinois Brick*'s logic is inapplicable to unjust enrichment.  The primary reason for rejecting the plaintiffs' use of pass-on theories was that they "would add whole new dimensions of complexity" and require "massive efforts to apportion the recovery among . . . direct purchasers to middlemen to ultimate consumers."  431 U.S. at 737.  Those concerns do not arise with unjust enrichment because "the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs."  *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 280 (E.D. Pa. 2013) (citation omitted).[122]

Defendants also fail to identify state statutes abrogating common law unjust enrichment claims.  This is fatal: "In order to abrogate a common-law principle, the statute must '**speak directly**' to the question."  *United States v. Texas*, 507 U.S. 529, 534 (1993) (emphasis added) (citation omitted). Federal statutes should not be construed to displace a court's traditional equitable jurisdiction absent the "clearest command" or an "inescapable inference" to the contrary.  *Miller v. French*, 530 U.S. 327, 340 (2000) (citations omitted).  *Illinois Brick* neither commands nor implies that jurisdiction over the equitable claims of indirect purchasers has been

---

[121] *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 539-40 (E.D. Pa. 2010) (citations omitted) ("unjust enrichment claims are viable regardless of the applicable state antitrust laws").

[122] *See also Flonase*, 692 F. Supp. 2d at 541 (unjust enrichment recovery measured by "the defendant's gain rather than the plaintiff's loss") (citation omitted). The Court in *Illinois Brick* was also concerned that numerous federal treble damage actions would subject defendants to "unwarranted multiple liability"; the Court was unwilling to accept the risk of defendants "pay[ing] sixfold or more damages." *Illinois Brick*, 431 U.S. at 730 & n.11. Again, this is not an issue: "The duplicative recovery problem that concerned the Court in *Illinois Brick* is absent" with unjust enrichment.  *In re Cardizem CD Antitrust Litig.*, MDL 1278, Order No. 70 at 32.

FILED WITH REDACTIONS – PUBLIC VERSION

displaced by federal antitrust law.  Indeed, its effects are expressly limited to statutory claims

under the Clayton Act.  *See California v. ARC Am. Corp.*, 490 U.S. 93, 102-03 (1989) (*Illinois*

*Brick* does not "contain[] any discussion of state law or of the relevant standards for pre-emption

of state law . . . [and] was strictly a question of statutory interpretation").  States relying on

federal antitrust law to interpret their own statutes cannot be said to have issued *any* command,

let alone a clear one, to abrogate equitable jurisdiction over common law claims.  Accordingly,

Plaintiffs' unjust enrichment claims should proceed in states adhering to *Illinois Brick*.[123]

## B.    Defendants' "Direct Benefit" Argument Fails[124]

Defendants assert that Plaintiffs' unjust enrichment claims fail because Plaintiffs have not

conferred a "direct benefit" on any defendant.  The term "direct" in the context of an unjust

enrichment claim does *not*, as Defendants suggest, refer to the privity between the parties, but to

a benefit that is not "incidental."  *Eggs*, 851 F. Supp. 2d at 934 (Florida, Kansas, New York,

North Carolina, and Utah do not require conferral of a direct benefit).  *See also* Appendix F

(responding to Defendants' appendices addressing "direct benefit" and unjust enrichment). Here,

"the chain of distribution in the pharmaceutical industry is short, direct, and well-understood . . .

[and p]rice increases can be directly traced throughout this distribution chain."  *Propranolol*, 249

F. Supp. 3d at 725 (citations omitted).  This is important because "[w]hether or not the benefit is

directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that

_____

[123] Defendants cite *Sheet Metal Workers*, 737 F. Supp.2d 380, to argue that unjust
enrichment is an "end-run" around Alabama's antitrust statute. But *Sheet Metal Workers* points
to no Alabama authority holding that the state's antitrust statute clearly abrogated equitable
jurisdiction such that independent claims for restitutionary relief would be barred.  Alabama in
fact recognizes that restitutionary relief can be pursued independent of statutory or other claims.
*See Jewett v. Boihem*, 23 So. 3d 658, 662 (Ala. 2009) (affirming award to plaintiff after trial
where "[plaintiff's] payments enriched the company [and the] enrichment of the company in turn
enriched [defendant]").

[124] *See* Defs.' EPP Br. at 34-35.

his detriment and the defendant's benefit are related and flow from the challenged conduct." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1189-90 (N.D. Cal. 2009) ("*TFT-LCD II*") (quotation marks and citation omitted).[125]  Plaintiffs allege that they overpaid as a result of Defendants' unlawful actions, that Defendants benefited and were enriched from those sales, that the benefits "are traceable to overpayments by Plaintiffs and the Damages Class," and that it would be inequitable for Defendants to retain those revenues. CCAC ¶¶ 292-311.[126]  That the benefit passed through third-parties does not preclude Plaintiffs' claims.[127]

## C.   Defendants' "Independent Cause of Action" Arguments Are Wrong[128]

Defendants incorrectly assert that unjust enrichment is not a standalone cause of action in four states.  **California**:  California's courts, "including the Supreme Court of California, have acknowledged that parties may pursue causes of action arising from an unjust enrichment claim…." *Eggs*, 851 F. Supp. 2d at 913-14.[129]  **Mississippi**: There is "considerable authority that supports the existence of an independent state law claim for unjust enrichment."  *Eggs*, 851 F.

---

[125] *See ER Antitrust Litig.*, No. 14 C 10150, 2016 WL 4245516, * 3 (N.D. Ill. Aug. 11, 2016) (citation omitted) ("In contending that [plaintiffs] have not shown they conferred any benefit directly on Defendants, Defendants mistakenly focus on the relationship between the parties, rather than on [plaintiffs'] injury and Defendants' conduct. . . . The critical inquiry is whether the Defendants received a benefit at [plaintiffs'] expense.").

[126] Defendants' reliance on *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) is misplaced. The chain of distribution there was more complicated and the final product was not manufactured by defendants. *Id.* at *3.  *Filters* has been considered and rejected even in other cases involving component parts. *See Auto Parts II*, 29 F. Supp. 3d at 1014-29 (considering *Filters* and the unjust enrichment laws of 31 jurisdictions and denying dismissal of claims for 30 jurisdictions). *See also Packaged Seafood*, 242 F. Supp. 3d at 1088-94 (discussing unjust enrichment claims).

[127] *See, e.g.*, *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011); *K-Dur*, 338 F. Supp. 2d at 545 n.35.

[128] *See* Defs.' EPP Br. at 35-36.

[129] *See In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M 07–CV–1827, 2011 WL 4345435, at *3-4 (N.D. Cal. Sept. 15, 2011) (upholding unjust enrichment claim); *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *14 (N.D. Cal. May 15, 2013) (same).

FILED WITH REDACTIONS – PUBLIC VERSION

Supp. 2d at 913.[130]  **New Hampshire**:  Courts "have allowed indirect purchasers to bring parasitic unjust-enrichment claims" based on violations of New Hampshire statutory law. *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 767 (E.D. Pa. 2014) (denying motion to dismiss end-payer plaintiff unjust enrichment claim based on adequately pleaded alleged violation of state consumer-protection statute). Here, Plaintiffs allege Defendants acted in violation of New Hampshire statutes. *See* CCAC ¶ 340.  **Illinois**: The law is clear that unjust enrichment is "recognize[d as] an independent cause of action" in Illinois.  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).[131]

### D.  Plaintiffs Satisfy Tennessee's "Exhaustion of Remedies" Requirement[132]

Defendants rely on *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W. 3d 512 (Tenn. Aug. 25, 2005), to argue that Plaintiffs failed to plead that they have exhausted all remedies.  But they ignore one of *Freeman*'s key holdings: "to maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity *if the pursuit of the remedies would be futile*."  *Freeman*, 172 S.W. 3d at 526 (emphasis added). Plaintiffs specifically plead that pursuit of remedies from parties in privity with Plaintiffs would be futile. *See* CCAC ¶ 353.  Accordingly, Defendants' argument fails.[133]

---

[130] *See also In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 194-95 (D. Me. 2010) ("a substantial body of Mississippi case law" treats unjust enrichment as a separate claim).

[131] *See Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E. 2d 439, 445 (Ill. 2004) ("Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment."). *See also Auto Parts II*, 29 F. Supp. 3d at 1019.

[132] *See* Defs.' EPP Br. at 36.

[133] *See TFT-LCD II*, 599 F. Supp. 2d at 1192-93 (denying motion to dismiss Tennessee unjust enrichment claim where "futility is evident"); *Auto Parts II*, 29 F. Supp. 3d at 1027 (applying futility exception; motion to dismiss Tennessee unjust enrichment claim denied); *Chocolate*, 749 F. Supp. 2d at 242 (same).

### E. **Plaintiffs Plead that They Lack an Adequate Legal Remedy**[134]

To preserve unjust enrichment as an equitable alternative to their statutory claims in certain states, Plaintiffs allege that they lack an adequate legal remedy. *See* CCAC ¶ 310. "Rule 8 . . . expressly permits pleading in the alternative . . . . 'It is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law.'" *In re G-Fees*, 584 F. Supp. 2d at 46 (quoting 1 Moore's Fed. Prac. § 2.03[2] (Matthew Bender 3d ed.)). Defendants' purported authority to the contrary is unpersuasive.[135]

### F. **Illinois and South Carolina Do Not Require a "Special Duty"**[136]

Defendants cite *Martis v. Grinnell Mutual Reinsurance Co.*, 905 N.E. 2d 920 (Ill. App. Ct. 2009) ("*Martis*") to assert that Illinois unjust enrichment claims require that defendants have an independent duty to act and fail to do so. But "*Martis* is not an accurate statement of the law on the equitable claim for unjust enrichment." *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E. 3d 1023, 1043 (Ill. App. Ct. 2015) (duty requirement "inapplicable" to unjust enrichment).

---

[134] *See* Defs.' EPP Br. at 36-37.

[135] Defendants rely on *Dooner v. Yuen*, No. CV 16-1939, 2016 WL 6080814, at *3 (D. Minn. Oct. 17, 2016) for the proposition that numerous state law claims should be dismissed on the pleadings, notwithstanding the clear allowance under Rule 8 to plead in the alternative. *Dooner* does not support such a conclusion. The cases cited (without discussion) in *Dooner* to support dismissal of unjust enrichment claims highlight its inapplicability here. In *Ventura v. Kyle*, 825 F.3d 876, 881 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 667 (2017), the 8th Circuit considered the propriety of a jury verdict that awarded damages under a theory of defamation and additional damages arising from the same conduct under a theory of unjust enrichment. Because the plaintiff had an adequate remedy at law (defamation) the unjust enrichment claim could not stand. In *United States v. Bame*, 721 F.3d 1025, 1031 (8th Cir. 2013), the 8th Circuit concluded (on review of summary judgment) that the Minnesota Fraudulent Transfer Act displaced unjust enrichment as a cause of action where the government was seeking to recoup an erroneous tax refund. None of these cases remotely stand for the proposition that Plaintiffs are precluded from pleading unjust enrichment as an alternative claim as contemplated by Rule 8.

[136] *See* Defs.' EPP Br. at 37-38.

FILED WITH REDACTIONS – PUBLIC VERSION

In South Carolina, "[t]here is no requirement to allege the existence of a duty" to maintain an unjust enrichment claim. *Auto Parts II*, 29 F. Supp. 3d at 1026.[137]  Defendants' cited cases improvidently borrow dicta from *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E. 2d 868, 873 (S.C. 2000) (*holding*: defendant did not receive or retain benefits conferred by plaintiff; *dicta*: result was not inequitable because defendant's "only duty" under *federal* (not state) law was limited in scope).

## VIII.   PLAINTIFFS' CLAIMS ARE TIMELY[138]

"Defendants 'bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'"  *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, No. 07-CV-01078, 2011 WL 11559549, at *27 (E.D. Pa. Mar. 24, 2011) (quoting *Van Buskirk v. Carey Can. Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)).  "Since the applicability of the statute of limitations usually involves questions of fact for the jury, if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (internal quotation marks and citation omitted).  "Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."  *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).

### A.       The Discovery Rule Applies

Under the discovery rule, "claims cannot accrue until they can be adequately pled" and thus "a fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and

---

[137] *See also Los Gatos Mercantile*, 2015 WL 4755335, at *30.

[138] *See* Defs. EPP Br. at 38-40.

FILED WITH REDACTIONS – PUBLIC VERSION

particularity to survive a 12(b)(6) motion to dismiss." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) (internal quotation marks and citations omitted).  "[K]nowledge of price increases alone, whether based on public announcements or corporate filings, does not inform a potential plaintiff of antitrust violations." *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1077-78 (N.D. Cal. 2014) (citing, inter alia, *Pension Trust Fund*, 730 F.3d at 275).[139]

Defendants argue that Plaintiffs should be responsible for having discovered their claims as soon as Defendants began to increase prices in July 2014.  Defs.'' EPP Br. at 38.  But the initial price announcements alone were insufficient to put Plaintiffs on notice of their claims.[140] Plaintiffs had no knowledge of Defendants' combination or conspiracy or of facts sufficient to place them on inquiry notice of their claims until (at the earliest) Defendants' disclosures of the existence of the government investigations and subpoenas.  CACC ¶¶ 176, 177-80.  The earliest any Econazole Defendant is alleged to have disclosed receiving a subpoena (which did not even specifically mention Econazole) is September 2016.  *Id.* ¶ 176.  There is therefore no basis for dismissing any state law claims subject to the discovery rule because a Econazole complaint was filed on January 17, 2017 and the current consolidated complaint was filed on August 15, 2017,

---

[139] *See also Packaged Seafood*, 242 F. Supp. 3d at 1099 ("In the present case, the most a reasonable EPP or CFP Plaintiff could have known prior to the investigation announcement was that prices for tuna were going up and can size was shrinking. These facts alone would almost certainly be insufficient to put Plaintiffs on notice that they should investigate the possibility of a tuna cartel."); *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2014 WL 2993753, at *13 (E.D. Mich. July 3, 2014) ("Market conditions standing alone do not put a plaintiff on notice that the prices it paid resulted from an illegal conspiracy.").

[140] Indeed, by simultaneously contending that Plaintiffs failed to allege facts that would make collusion a plausible explanation for price increases *and* faulting Plaintiffs for not having brought suit as soon as the price increases were announced, Defendants' statute of limitation argument is plainly at odds with their *Twombly* arguments.

FILED WITH REDACTIONS – PUBLIC VERSION

both within one year of the earliest date Plaintiffs could have been put on inquiry notice of their Econazole claims.  *See* Appendix G.

## B.   <u>Plaintiffs Adequately Allege Fraudulent Concealment</u>

Defendants' statute of limitations arguments also fail because Plaintiffs have sufficiently alleged fraudulent concealment.  "[T]he doctrine of fraudulent concealment tolls the limitation period when a plaintiff's cause of action has been obscured by the defendant's conduct."  *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002).  For a statute of limitations to be tolled under the doctrine of fraudulent concealment, a plaintiff must show an affirmative act of concealment by the defendants, which misled the plaintiff or relaxed its inquiry, and that the plaintiff exercised due diligence.  *See* Appendix G (listing state law requirements).  "Fraudulent concealment allegations must be pleaded with particularity under Federal Rule of Civil Procedure 9(b), [but] so as not to allow 'sophisticated defrauders to successfully conceal the details of their fraud . . . courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.'"  *In re Fasteners Antitrust Litig.*, No. Civ. A. 08-MD-1912, 2011 WL 3563989, at *3 (E.D. Pa. Aug. 12, 2011) (citations omitted).  "Issues of diligence and constructive notice, which are inherently factual, generally should not be decided on a motion to dismiss."  *In re Aspartame Antitrust Litig.*, No. CIV.A.2:06-CV-1732, 2007 WL 5215231, at *6 (E.D. Pa. Jan. 18, 2007).

Plaintiffs allege specific false statements through which Defendants denied that their conspiracy was the result of any agreements with one another and statements that they were competing rather than colluding with one another.  CACC ¶¶ 187, 189.  Defendants continued to

make these statements until at least March 2015.  *Id.*  Such allegations of fraudulent concealment are sufficient to withstand a motion to dismiss.[141]

### C.      The Continuing Violation Doctrine Applies

Finally, even assuming Defendants are correct in arguing that any of Plaintiffs' state law claims were filed outside of the applicable limitations period, "[u]nder the continuing-violation doctrine, 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period,'" and plaintiffs can recover damages from an illegal overcharge within the limitations period. *Niaspan*, 42 F. Supp. 3d at 746 (citations omitted).  In order to plead a continuing violation for statute of limitations purposes, "Plaintiffs must allege: (1) 'a price-fixing conspiracy;' (2) 'that brings about a series of unlawfully high priced sales' during the class period; and (3) 'sale[s] to the plaintiff[s]' during the class period."  *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1068 (8th Cir. 2017).

Plaintiffs' allegations satisfy this standard.  Accordingly, based on the fact that Plaintiffs continued to pay inflated prices within the limitations period as a result of Defendants' unlawful

---

[141] *See, e.g.*, *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 85 F. Supp. 3d 1007, 1012 (E.D. Wis. 2015) (finding that plaintiff pleaded affirmative fraudulent conduct with particularity sufficient to toll statute of limitations for state law claims with allegations of defendants "falsely attributing the cause of price increases to other causes and agreeing among themselves to keep their price-fixing secret"); *Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d at 1018-19 ("[T]aking as true the allegations in the CAC relating to affirmative acts of public disclosure on the part of at least some of the Defendants of compliance with the very laws they have now admitted to violating, and the fact that fraudulent concealment is a question best left to the jury if there is any question, the Court finds that under the pleading standard set forth in *Twombly*, Plaintiffs' claims of fraudulent concealment plausibly allege affirmative acts of concealment which satisfy the *Twombly*, *Iqbal* requirements.").

FILED WITH REDACTIONS – PUBLIC VERSION

conduct, the court should not dismiss any of Plaintiffs' state law claims even if those claims fall outside of the limitations period.[142]

## IX.   IF THE CACC IS DEEMED LEGALLY INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

If the Court should deem the Plaintiffs' complaint legally insufficient in any respect, Plaintiffs respectfully request leave to amend.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

## X.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to dismiss EPPs' Consolidated End-Payer Class Action Complaint.

---

[142] *See In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2013 WL 2181185, at *32 (E.D. Tenn. May 20, 2013) (refusing to dismiss "state law claims that are governed by the 'date of injury' rule" "even if Plaintiffs' state law claims fell outside of the applicable statutes of limitations" where Plaintiffs plausibly alleged facts "that would satisfy the continuing violations doctrine and/or the fraudulent concealment doctrine"); *see also Fond Du Lac Bumper Exch.*, 85 F. Supp. 3d at 1011 (finding continuing violation doctrine applicable to Arkansas, North Carolina, and Tennessee state law claims).

FILED WITH REDACTIONS – PUBLIC VERSION

Dated:  December 8, 2017

Respectfully submitted,

*/s/  Roberta D. Liebenberg*
Roberta D. Liebenberg, Esquire
Jeffrey S. Istvan, Esquire
Paul Costa, Esquire
Adam J. Pessin, Esquire
Fine, Kaplan and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA  19107
(215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
pcosta@finekaplan.com
apessin@finekaplan.com

**Lead Counsel for the End-Payer Plaintiffs**

Gregory S. Asciolla, Esquire
Jay L. Himes, Esquire
Christopher J. McDonald, Esquire
Karin E. Garvey, Esquire
Domenico Minerva, Esquire
Lara Goldstone, Esquire
Robin A. van der Meulen, Esquire
Matthew J. Perez, Esquire
Labaton Sucharow LLP
140 Broadway
New York, NY  10005
(212) 907-0700
gasciolla@labaton.com
jhimes@labaton.com
cmcdonald@labaton.com
kgarvey@labaton.com
dminerva@labaton.com
lgoldstone@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

Michael M. Buchman, Esquire
Erin C. Durba, Esquire
Michelle C. Zolnoski, Esquire
Motley Rice LLC
600 Third Avenue, Suite 2101
New York, NY  10016
(212) 577-0040
mbuchman@motleyrice.com
edurba@motleyrice.com
mzolnoski@motleyrice.com

Elizabeth J. Cabraser, Esquire
Dean M. Harvey, Esquire
David T. Rudolph, Esquire
Bruce W. Leppla, Esquire
Michelle A. Lamy, Esquire

James R. Dugan, II, Esquire
David S. Scalia, Esquire
Douglas R. Plymale, Esquire
Lanson Bordelon, Esquire
Mekel Smith-Alvarez, Esquire

FILED WITH REDACTIONS – PUBLIC VERSION

Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dharvey@lchb.com
drudolph@lhcb.com
bleppla@lchb.com
mlamy@lchb.com

The Dugan Law Firm, APLC
365 Canal Street, Suite 1000
New Orleans, LA 70130
(504) 648-0180
jdugan@dugan-lawfirm.com
dscalia@dugan-lawfirm.com
dplymale@dugan-lawfirm.com
lbordelon@ dugan-lawfirm.com
mekel@dugan-lawfirm.com

Jayne A. Goldstein, Esquire
Shepherd Finkelman Miller & Shah, LLP
1625 N. Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
(954) 515-0123
jgoldstein@sfmslaw.com

Mindee J. Reuben, Esquire
Steven J. Greenfogel, Esquire
Lite DePalma Greenberg, LLC
1835 Market Street, 27th Floor
Philadelphia, PA 19103
(267) 314-7980 (MJR direct)
(267) 519-8306 (Office)
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

Natalie Finkelman Bennett, Esquire
Shepherd Finkelman Miller & Shah, LLP
35 East State Street
Media, PA 19063
(610) 891-9880
nfinkelman@sfmslaw.com

Joseph R. Saveri, Esquire
Nicomedes S. Herrera, Esquire
Ryan J. McEwan, Esquire
Joseph Saveri Law Firm, Inc.
555 Montgomery Street, Suite 1210
San Francisco, CA 94111
(415) 500-6800
jsaveri@saverilawfirm.com
NHerrera@saverilawfirm.com
rmcewan@saverilawfirm.com

Dena C. Sharp, Esquire
Jordan Elias, Esquire
Scott M. Grzenczyk, Esquire
Elizabeth A. Kramer, Esquire
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800
chc@girardgibbs.com
je@girardgibbs.com
smg@girardgibbs.com
eak@girardgibbs.com

Heidi M. Silton, Esquire
Karen Hanson Riebel, Esquire
Anna M. Horning Nygren, Esquire
Kristen Marttila, Esquire
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com

Bonny E. Sweeney, Esquire
Michael P. Lehmann, Esquire
Christopher L. Lebsock, Esquire
Stephanie Y. Cho, Esquire
Hausfeld LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
(415) 633-1908
bsweeney@hausfeld.com

FILED WITH REDACTIONS – PUBLIC VERSION

khriebel@locklaw.com
amhorningnygren@locklaw.com
kgmarttila@locklaw.com

Steven N. Williams
Adam J. Zapala
Joyce Chang
Tamarah Prevost
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA  94010
(650) 697-6000
swilliams@cpmlegal.com
azapala@cpmlegal.com
JChang@cpmlegal.com
tprevost@cpmlegal.com

mlehmann@hausfeld.com
c1ebsock@hausfeld.com
scho@hausfeld.com

Michael D. Hausfeld, Esquire
Jeannine M. Kenney, Esquire
Sathya S. Gosselin, Esquire
Hausfeld LLP
1700 K Street NW, Suite 650
Washington, DC 20006
202-540-7200
202-540-7201 fax
mhausfeld@hausfeld.com
jkenney@hausfeld.com
sgosselin@hausfeld.com

## End-Payer Plaintiffs' Steering Committee

Audrey A. Browne, Esquire
Seth Kennedy, Esquire
    American Federation of State, County
    and Municipal Employees District
    Council 37 Health & Security Plan
125 Barclay Street, Room 313
New York, NY 10007
(212) 815-1304
abrowne@dc37.net
skennedy@dc37.net

**Attorneys for Plaintiff American
Federation of State, County and
Municipal Employees District
Council 37 Health & Security Plan**

Jeffrey A. Barrack, Esquire
Jeffrey B. Gittleman, Esquire
Chad A. Carder, Esquire
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 963-0600
jbarrack@barrack.com
jgittleman@barrack.com
ccarder@barrack.com

Peter Safirstein, Esquire
SAFIRSTEIN METCALF LLP
1250 Broadway, 27th Floor
New York, NY 10001
(212) 201-2845
psafirstein@safirsteinmetcalf.com

**Additional End-Payer Plaintiffs' Counsel**

FILED WITH REDACTIONS – PUBLIC VERSION